

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-16-00806-CR

Roger **SALDANA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 81st Judicial District Court, Frio County, Texas
Trial Court No. 15-08-00031-CRF
Honorable Russell Wilson, Judge Presiding

Opinion by:    Luz Elena D. Chapa, Justice

Sitting:        Rebeca C. Martinez, Justice
                Patricia O. Alvarez, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed:  August 8, 2018

AFFIRMED

Roger Saldana appeals his convictions for trafficking and sexual assault of A.G., a child. He argues the trial court erred by denying his motions to suppress evidence obtained from a traffic stop and from a search of a cell phone. He also argues the State wrongfully withheld evidence favorable to the defense until almost a year after the trial court imposed his sentences. We affirm the trial court's judgments.

**BACKGROUND**

In May 2015, Saldana was stopped by Department of Public Safety State Trooper Jason Sanchez for driving on an improved shoulder of the road. According to Trooper Sanchez, this stop was the third time he had encountered Saldana during a traffic stop. During the two prior stops, Saldana was the passenger and the drivers were arrested; one for possession of cocaine, and the other for possession of marijuana and driving while intoxicated. Trooper Sanchez saw what he believed was marijuana ash in the car, and he asked Saldana to step out of the vehicle for questioning. A.G., who was fifteen years old at the time, was sitting in the front passenger seat.

During the next ten minutes, Trooper Sanchez questioned Saldana and A.G., and he called for a canine unit within approximately four minutes of the initial stop. Two other DPS state troopers, Jason Norton and John Hernandez, arrived during the stop. Trooper Hernandez arrived approximately fourteen minutes after the initial traffic stop with a canine partner, Nimo. Nimo completed his drug sniff within twenty minutes of the initial traffic stop. Based on Nimo's response, the troopers searched the car and found a bottle of liquor.[1] Trooper Sanchez also took a cell phone from A.G. and found evidence on the phone suggesting Saldana and A.G. had a romantic relationship. A.G. told Trooper Sanchez that Saldana had given her alcohol, and Saldana was arrested at the scene for providing alcohol to a minor.

Saldana was thereafter charged by indictment with one count of trafficking of a person and three counts of sexual assault of a child. Saldana filed two motions to suppress evidence obtained from the traffic stop and from the search of the cell phone. The trial court held a hearing on Saldana's motions. The testifying witnesses were Saldana, A.G., Troopers Sanchez and Norton, and Keven Ficke, a criminal investigator who worked for the District Attorney's Office. The trial

---

[1] Trooper Sanchez testified he did not smell or find any drugs during the search.

court also admitted into evidence video recordings from the cameras on and inside the troopers' vehicles, photographs of the cell phone, and a cell phone bill.

At the close of the suppression hearing, the trial court denied Saldana's motions. Saldana entered into a plea bargain with the State, and the trial court held a plea hearing. Saldana entered a plea of guilty to trafficking of a person and one count of sexual assault of a child. The trial court found Saldana's plea was made voluntarily and accepted the plea. After a punishment hearing, the trial court assessed sentences at thirty-five years in prison for the trafficking offense and twenty years in prison for the sexual assault offense. The trial court imposed the sentences and signed certifications noting Saldana's limited right of appeal. *See* TEX. CODE CRIM. PROC. ANN. art. 44.02 (West 2018) (providing limited right of appeal in plea-bargain cases).

### FAILURE TO DISCLOSE EVIDENCE

Saldana argues the State wrongfully withheld evidence in violation of article 39.14 of the Texas Code of Criminal Procedure and *Brady v. Maryland*, 373 U.S. 83 (1963). According to Saldana, the State waited almost a year after the trial court imposed his sentences to disclose evidence relating to Investigator Ficke's credibility as a witness. In support of his issue, Saldana has filed a motion in this court to supplement the appellate record in order to include the evidence the State untimely disclosed. The State has filed a response opposing Saldana's motion.

The trial court certified that this is a plea-bargain case and Saldana has a limited right to appeal only those matters raised by written motion and ruled on before trial. *See* TEX. R. APP. P. 25.2(a)(2). Article 44.02 of the Texas Code of Criminal Procedure provides when a defendant has a right of appeal:

> A defendant in any criminal action has the right of appeal under the rules hereinafter prescribed, provided, however, before the defendant who has been convicted upon . . . his plea of guilty . . . before the court and the court, upon the election of the defendant, assesses punishment and the punishment does not exceed the punishment recommended by the prosecutor and agreed to by the defendant and his

> attorney may prosecute his appeal, he must have permission of the trial court, except on those matters which have been raised by written motion filed prior to trial.

TEX. CODE CRIM. PROC. ANN. art. 44.02 (West 2018). The record shows Saldana was convicted upon his plea of guilty and that the punishment assessed by the trial court for each conviction did not exceed the punishment recommended by the State and agreed to by Saldana. The record does not show Saldana obtained the trial court's permission to appeal other matters.

Saldana's right of appeal is therefore limited to matters raised by written motion and ruled on by the trial court. *See id.*; *Williamson v. State*, 46 S.W.3d 463, 465 (Tex. App.—Dallas 2001, no pet.). Saldana did not raise the matter of the State's failure to timely disclose favorable evidence by written motion in the trial court and obtain a ruling on that motion. *Cf. Cooper v. State*, 45 S.W.3d 77, 82-83 (Tex. Crim. App. 2001) (affirming court of appeals' holding that it may not address issue not raised in trial court by written motion and ruled on, explaining such matters in plea-bargain cases may be raised by writ of habeas corpus). We hold we may not address this issue on appeal and deny Saldana's motion to supplement the appellate record as moot. *See* TEX. CODE CRIM. PROC. ANN. art. 44.02; TEX. R. APP. P. 25.2(b); *Cooper*, 45 S.W.3d at 82-83; *Williamson*, 46 S.W.3d at 465.

### MOTIONS TO SUPPRESS

Saldana argues the trial court erred by denying his motions to suppress. He argues the detaining officers illegally searched the cell phone and unreasonably prolonged the duration of his traffic stop to wait for the arrival of the canine unit for a drug sniff.

### A. Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We review a trial court's conclusions of law de novo. *Id.* at 328. If a trial court's fact findings are supported by the record

or are based on the evaluation of witness credibility and demeanor, we should afford them almost total deference. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). "The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony." *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). When, as here, the trial judge makes no express findings of fact, we must assume the trial court made implicit findings of fact that support its ruling so long as those findings are supported by the record. *Id.*

## B. Illegal Search

Saldana argues the cell phone was searched in violation of his Fourth Amendment right to be free from unreasonable searches. The State responds Saldana lacked standing to assert a Fourth Amendment violation because the cell phone belonged to A.G. The Fourth Amendment provides individuals the right to be secure against unreasonable searches. U.S. CONST. amend. IV; *accord State v. Huse*, 491 S.W.3d 833, 839 (Tex. Crim. App. 2016). "[T]he substantive question of what constitutes a 'search' for purposes of the Fourth Amendment [h]as effectively merged with what had been a procedural question of 'standing' to challenge such a search." *Huse*, 491 S.W.3d at 839-40. What may serve to confer Fourth Amendment standing may be predicated "on either an intrusion-upon-property principle or a reasonable-expectation-of-privacy principle." *Id.* at 840. "Traditionally, individuals do not maintain a reasonable expectation of privacy in information voluntarily revealed to third parties." *Love v. State*, 543 S.W.3d 835, 841 (Tex. Crim. App. 2016).

Saldana argues he owned the cell phone and had a reasonable expectation of privacy in the cell phone's contents. However, A.G. testified the cell phone was hers, Saldana purchased the phone with her money, and Saldana "sometimes" paid the bill. The trial court also saw photos of and heard testimony about the cell phone case, which was red or pink, had plastic jewels on the back, and had "A[.G.] and Roger in bubble letters" on it. Trooper Sanchez and A.G. testified the cell phone was in A.G.'s exclusive possession during the traffic stop, and A.G. stated she

sometimes let Saldana use her phone. It was also undisputed at the suppression hearing that Saldana is not A.G.'s parent or legal guardian. Although Saldana relies on a cell phone bill to show his ownership of the cell phone, the trial court had a reasonable basis to discredit the bill as proof of ownership: the bill listed the financially liable party as "Roger Customer," the credit address as "12345 Go Phone Way," and the contact's home phone number as "(999) 999-9999."

The record supports implied findings that A.G., and not Saldana, owned the cell phone, Saldana did not have a reasonable expectation of privacy in the contents in the cell phone, and Saldana therefore did not have Fourth Amendment standing. *See Grant v. State*, 531 S.W.3d 898, 901 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) ("[A]lthough appellant purchased the phone, the trial court reasonably could have concluded that appellant did not own it at the time it was stolen because he had given it to [another person] and thus had relinquished any property or possessory right in the phone."). We hold the trial court properly denied Saldana's motions to suppress to the extent they were based on the search of A.G.'s cell phone.

## C. Illegal Seizure

"An officer may make a warrantless traffic stop if the 'reasonable suspicion' standard is satisfied." *Jaganathan v. State*, 479 S.W.3d 244, 247 (Tex. Crim. App. 2015). "Reasonable suspicion exists if the officer has specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaging in criminal activity." *Id.* (internal quotation marks omitted). Saldana does not contest that Trooper Sanchez lawfully stopped him for driving on an improved shoulder of the road. His sole argument is that Trooper Sanchez lacked reasonable suspicion to extend the duration of the traffic stop to wait for the canine unit to arrive.

A traffic stop, as an investigatory detention, generally may not exceed the time needed to handle the matter for which the seizure was made. *Rodriguez v. United States*, 135 S. Ct. 1609,

1612 (2015). However, the Fourth Amendment tolerates unrelated investigations—such as checking the driver's license, checking for outstanding warrants, and inspecting the car's registration and proof of insurance—that do not lengthen the duration of the traffic stop. *Id.* at 1614-15. An officer may develop reasonable suspicion of a separate offense during a traffic stop that justifies further detaining the driver after the officer completes the investigation of the initial traffic offense. *See id.* at 1616-17. In determining whether an officer has developed reasonable suspicion to justify further detaining a driver, we consider the totality of the circumstances. *See Fisher v. State*, 481 S.W.3d 403, 408 (Tex. App.—Texarkana 2015, pet. ref'd). "[C]ircumstances may all seem innocent enough in isolation, but if they combine to reasonably suggest the imminence of criminal conduct, an investigative detention is justified." *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011).

The parties' arguments about the duration of stop are based primarily on the following, mostly-undisputed timeline of events, at the following approximate[2] times:

**2:20 p.m.**: Trooper Sanchez initiated the traffic stop of Saldana for driving on the improved shoulder of the road.

**2:21 p.m.**: Trooper Sanchez approached Saldana and saw A.G., who appeared to be school-aged and who was not in school on a school day. Trooper Sanchez also observed ashes in the car that he thought were from a marijuana cigarette.

**2:22 p.m.**: Trooper Sanchez checked Saldana's license and insurance. Saldana told Trooper Sanchez that A.G. is his fiancée's younger sister, and he exited the car at Trooper Sanchez's request.

**2:23 p.m.**: Trooper Sanchez performed a brief field sobriety test on Saldana.

**2:24 p.m.**: Trooper Sanchez called for a canine unit.

**2:25 p.m. to 2:33 p.m.**: Trooper Sanchez began questioning A.G., who told Trooper Sanchez that she was fifteen years old and that she was not in school because she was sick. A.G. did not appear sick to Trooper Sanchez, and A.G. could

---

[2] The video recordings filed with this court contain no time stamps. The approximate times are based on testimony as to when the stop was initiated and the number of minutes into the video that the events occurred.

not tell Trooper Sanchez what school she attended. A.G. said she and Saldana were going to eat in Pearsall and then go to San Antonio, but then she changed her story and said they were going to a game room. Trooper Sanchez noticed A.G. had a cell phone with a case that said "A[.G.] and Roger" on it.

**2:27 p.m.**: Trooper Norton arrived as back-up and began questioning Saldana.

**2:27 p.m. to 2:37 p.m.**: The officers continued questioning Saldana.

**2:37 p.m. to 2:39 p.m.**: The canine unit arrived, and Nimo performed the drug sniff. One of the officers continued to question Saldana. While the officers were conducting the search, A.G. continued to send text messages and make phone calls even though she had been told not to. Trooper Sanchez took the cell phone from A.G. and saw on "the lock screen" a picture of Saldana and A.G. hugging or cuddling on a bed.

Saldana quotes the following testimony of Trooper Sanchez:

Q. Okay. And while you're waiting for the [canine], what do you do?

A. I spoke with Roger [Saldana] again.

Q. Okay. What do you-all talk about?

A. We spoke about just what -- I think Norton -- Trooper Norton had been talking to him, and I came in. Roger [Saldana] was just telling us about the fishing poles they had on the car, and what they had done the night before. They had gone fishing. It wasn't anything substantial.

Q. So you-all made small talk?

A. Pretty much.

Saldana argues this testimony establishes the officers were "feet dragging," and that their "small talk" had the sole purpose of stalling for the arrival of the canine unit. He also argues his prior encounters with Trooper Sanchez and having ash in his car did not give Trooper Sanchez reasonable suspicion to believe he had drugs in his car. Saldana contends this case falls squarely within the prohibitions set out by the Supreme Court of the United States in *Rodriguez*.

Here, unlike *Rodriguez*, none of the detaining officers testified the initial traffic stop for driving on the improved shoulder of the road had been completed before the calling and arrival of

the canine unit. *See* 135 S. Ct. at 1613 (noting the officer testified he requested a canine unit and extended stop after he gave the detained individuals "their documents back and a copy of the written warning. I got all the reason[s] for the stop out of the way[,] ... took care of all the business"). Trooper Sanchez first observed Saldana commit a criminal traffic offense in his presence, and he then initiated a traffic stop. *See Abney v. State*, 394 S.W.3d 542, 548 (Tex. Crim. App. 2013) (noting officer's observing a traffic violation provides reasonable suspicion for a traffic stop). Within the first few minutes of the stop, Trooper Sanchez obtained reasonable suspicion to believe A.G. was truant and was suspicious about why A.G. was with Saldana on a school day when Saldana was not A.G.'s parent or legal guardian. *See Rassaf v. State*, No. 05-03-00647-CR, 2004 WL 1166485, at *2 (Tex. App.—Dallas May 26, 2004, no pet.) (mem. op., not designated for publication) (holding reasonable suspicion of truancy justified detention). During those first few minutes, Trooper Sanchez also called the canine unit based on his previous encounters with Saldana that involved drugs, and based on seeing ashes in Saldana's car. During Trooper Sanchez's conversation with A.G., A.G. changed her story about her and Saldana's plans for that day and she could not name the school she attended. *See Balentine v. State*, 71 S.W.3d 763, 769-70 (Tex. Crim. App. 2002) (holding inconsistent statements and an inability to answer basic questions supported reasonable suspicion). Trooper Sanchez testified that based on his observations, training, and experience, specifically in trafficking of children, he had reason to suspect an improper relationship between A.G. and Saldana. *See Ramirez-Tamayo v. State*, 537 S.W.3d 29, 36 (Tex. Crim. App. 2017) (stating courts may assess reasonable suspicion by considering evidence of an officer's training and experience). Thus, during the traffic stop, the officers acquired reasonable suspicion of other criminal activity that justified extending the duration of the traffic stop. *See Fisher*, 481 S.W.3d at 407.

Although Saldana focuses on Trooper Sanchez's "small talk" comment in isolation, we must view the statement in context of both Trooper Sanchez's and Trooper Norton's testimony. Both officers testified Trooper Norton was questioning Saldana about his relationship with A.G. and what they were doing the night before. According to Trooper Norton, Saldana said he and his friends went fishing the night before at a lake, and Saldana started talking about the fishing poles on top of the car. Trooper Sanchez testified said he "came in" to the conversation and the remarks about fishing poles were "pretty much" "small talk." But the troopers' testimony, viewed in context, supports implied findings that Trooper Norton had reasonable suspicion justifying further detaining Saldana to inquire about his relationship with A.G., that the officers questioning of Saldana about his relationship with Saldana was not merely small talk that unreasonably extended the duration of the investigative detention, and that the officers had not completed their investigation into the nature of Saldana's relationship with A.G. until after the canine drug sniff. *See Valtierra*, 310 S.W.3d at 447 (stating the trial court is the sole judge of witness credibility and weight to be given to their testimony).

Even if Trooper Sanchez lacked reasonable suspicion to believe Saldana was in possession of drugs specifically, the record supports implied findings that the duration of the stop was justified by Trooper Sanchez's reasonable suspicion of other criminal activity, including first a traffic violation, then A.G.'s truancy, and then an improper relationship between Saldana and A.G. *See Fisher*, 481 S.W.3d at 407. Saldana argues the troopers ceased their questioning of A.G. at 2:33 p.m., approximately four minutes before the canine drug sniff, and thus had completed their investigation. However, the record shows that despite not talking to A.G. for several minutes, the troopers continued their investigation into A.G.'s and Saldana's relationship after the canine drug sniff. Thus, nothing in the record establishes the troopers had completed their investigation into all other reasonably suspected criminal activity before the canine drug sniff or that the canine drug

sniff unreasonably extended the duration of the traffic stop. *See Rodriguez*, 135 S. Ct. at 1614-17. We hold the trial court properly concluded the duration of the stop was reasonable under the totality of the circumstances, and that the trial court properly denied Saldana's motions to suppress to the extent they were based on an illegal seizure.

## CONCLUSION

Our jurisdiction is limited to Saldana's issues regarding the denial of his motions to suppress. Because we hold the trial court properly denied those motions, we affirm the trial court's judgments of conviction.

Luz Elena D. Chapa, Justice

DO NOT PUBLISH