**Reversed and Remanded and Opinion filed July 8, 2014.**



In The

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

## NO. 14-13-00356-CR

### FRANCHESKA V. JAGANATHAN, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 344th District Court
Chambers County, Texas
Trial Court Cause No. 15792**

## O P I N I O N

Appellant Francheska V. Jaganathan appeals the trial court's denial of a motion to suppress. Appellant alleges that the evidence was seized during an unlawful detention. Because the arresting officer lacked reasonable suspicion to detain appellant for violating the "Left Lane for Passing Only" sign, we conclude that the trial court committed harmful error when it denied appellant's motion to suppress. We reverse and remand.

## I.    Factual and Procedural Background

On the afternoon of June 5, 2010, appellant was driving east through Chambers County, Texas in the left lane of Interstate 10. A State Trooper with the Texas Department of Public Safety stopped appellant for driving in the left lane without passing. During the course of the traffic stop, the State Trooper smelled marijuana, searched appellant's vehicle, and found marijuana in the trunk.

Appellant was indicted for intentionally and knowingly possessing a usable quantity of marijuana in an amount of fifty pounds or less but more than five pounds. Appellant filed a "Motion to Suppress Evidence from Unlawful Search." The motion alleged that the traffic stop was unreasonable and therefore unlawful. The court held a hearing and denied the motion. Pursuant to a plea agreement, appellant pled guilty to the charge as stated in the indictment and was placed on deferred adjudication. Appellant timely appealed.

## II.    Discussion

### A.    Burden of Proof

A defendant who alleges a seizure in violation of the Fourth Amendment must produce some evidence that rebuts the presumption of proper police conduct. *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009). To satisfy this burden, the defendant must establish that the search or seizure occurred without a warrant. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). Once the defendant makes this showing, the State must prove that the seizure was conducted pursuant to a warrant or was reasonable. *Id.* Here, it is undisputed that the detention of appellant occurred without a warrant. Therefore, we must determine whether the State established that the warrantless temporary detention of appellant was reasonable.

## B.    *Reasonable Suspicion*

A warrantless temporary detention, such as a traffic stop, is lawful when the officer has reasonable suspicion to believe that an individual is violating the law. *Id.* Reasonable suspicion exists if the officer has specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a person has engaged, is engaging, or soon will be engaging in criminal activity. *Abney v. State*, 394 S.W.3d 542, 548 (Tex. Crim. App. 2013). This objective standard disregards the officer's subjective intent and looks solely at whether an objective basis for the detention exists. *Ford*, 158 S.W.3d at 492. A reasonable-suspicion determination is made by considering the totality of the circumstances at the time of the detention and must be based on commonsense judgments and inferences about human behavior. *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000).

## C.    *Standard of Review*

Texas courts use a bifurcated standard of review to evaluate the totality of the circumstances and determine whether reasonable suspicion exists. *Abney*, 394 S.W.3d at 547. We must give almost total deference to the trial court's determination of historical facts that are supported by the record, but we review de novo the trial court's application of the law to the facts that do not turn on credibility and demeanor. *Id.* "A question 'turns' on an evaluation of credibility and demeanor 'when the testimony of one or more witnesses, if believed, is *always* enough to add up to what is needed to decide the substantive issue.'" *Id.* (quoting *Loserth v. State*, 963 S.W.2d 770, 773 (Tex. Crim. App. 1998)). Because the trial court did not make explicit findings of fact in this case, we review the evidence in a light most favorable to the trial court's ruling and assume the trial court made implicit findings of fact supported by the record. *Ford*, 158 S.W.3d at 493; *State v.*

3

*Ross*, 32 S.W.3d 853, 855–56 (Tex. Crim. App. 2000). An appellate court can, however, review de novo indisputable visual evidence contained in a video recording. *Duran*, 396 S.W.3d at 570–71; *see Carmouche v. State*, 10 S.W.3d 323, 332 (Tex. Crim. App. 2000). The record in this case contains indisputable visual evidence of the events at issue. We therefore apply a de novo standard of review.

### D.  Application

The State was required to show that the officer had a reasonable suspicion that appellant committed the traffic violation of driving in the left lane without passing when an official traffic-control device prohibited doing so. *See Abney*, 394 S.W.3d at 548. Appellant contends that the trial court erred in denying her motion to suppress because under these circumstances and in light of the Court of Criminal Appeals' recent decision in *Abney*, no reasonable officer would have stopped appellant. The State responds that because appellant passed the "Left Lane for Passing Only" sign and drove in the left lane for a half mile without passing, the officer was justified in detaining appellant. We conclude that the officer in this case did not have a "pre-existing sufficient quantum" of evidence to justify the stop. *See Duran*, 396 S.W.3d at 569.

Section 544.004(a) of the Texas Transportation Code states, in pertinent part, that "[t]he operator of a vehicle or streetcar shall comply with an applicable official traffic-control device placed as provided by this subtitle . . . ." Tex. Transp. Code Ann. § 544.004(a) (West 2011). A "Left Lane for Passing Only" sign is an "official traffic-control device." *See id.* § 541.304(1) (West 2011). If there is a sign present that says the left lane is for passing only, it is a traffic offense to travel in the left lane when not passing a vehicle. *Abney*, 394 S.W.3d at 548; *see* Tex. Transp. Code Ann. § 542.301 (West 2011).

4

The determination of whether the offense of driving in the left lane without passing has been committed depends upon the facts of each case. *Abney*, 394 S.W.3d at 549–50. A court should consider the following factors when making this determination: (1) whether the motorist passed the traffic sign; (2) whether facts exist from which the officer can reasonably infer that the motorist passed the traffic sign; (3) the distance the officer followed the motorist before effecting the stop; and (4) the existence of entrances onto the highway between the sign and the location of the stop. *See id.* at 449–50; *see also United States v. Garcia*, 976 F. Supp. 2d 856, 863 (N.D. Tex. 2013) (applying *Abney*). The federal district court in *Garcia* implicitly considered two additional factors within its analysis of the third *Abney* factor: (1) whether the video evidence indicates that the officer observed the defendant either actively passing another vehicle or in a position to pass another vehicle and (2) whether the officer's actions influenced the defendant's behavior in a manner that prevented the defendant from complying with the traffic regulation. *See Garcia*, 976 F. Supp. 2d at 865–66.

*Abney* factors (1), (2), and (4) are not applicable in this case because the video evidence shows that appellant actually passed the "Left Lane for Passing Only" sign. With regard to the factors that do apply, the district judge's analysis in *Garcia* is instructive. There, the video evidence showed that the defendant passed a vehicle shortly after passing the officer's patrol car. *Id.* at 865. The video evidence also showed that the defendant was gaining speed on a large rig truck that was in the right lane. *Id.* The officer accelerated to close the gap between his patrol car and the defendant's pickup truck before making the traffic stop and acknowledged in testimony that it would have been unsafe for the defendant to move into the right lane in front of the patrol car after the officer had accelerated. *Id.* at 865–66. The officer further acknowledged that it was uncommon for a motorist to move his

vehicle in front of a marked patrol car that is accelerating. *Id.* at 866. The officer made the decision to pull the defendant over within the first twenty-five seconds of seeing the defendant's pickup truck and running the license and registration check. *Id.* at 865. Based on these facts—namely, the short window of time that had elapsed before the officer increased his speed and the fact that the defendant was in the process of passing two other vehicles—the district judge concluded that the officer "did not allow sufficient time for the traffic offense to occur." *Id.* at 866.

As in *Garcia*, the record here does not support a finding of reasonable suspicion. First, the State Trooper was driving in the right lane when appellant passed the "Left Lane for Passing Only" sign. From his vantage point, he could have observed that appellant had recently passed a dark-colored pickup truck and was increasing the distance between her car and the pickup. He could have also seen that a white car merged from the right lane to the middle lane as appellant passed the "Left Lane for Passing Only" sign, which may have prevented appellant from safely moving into the middle lane.

Second, the State Trooper's actions may have influenced appellant's behavior in a manner that prevented appellant from complying with the "Left Lane for Passing Only" sign. The State Trooper approached appellant's vehicle at a high rate of speed, which, based on commonsense judgment and inferences of human behavior, could have caused appellant to slow down, effectively ending appellant's ability to pass the white car that had merged into the middle lane. Additionally, the State Trooper testified that it is generally not reasonable for an individual to pull in front of, or next to, a clearly marked police car when the police car is approaching at a higher rate of speed.

Third, the State Trooper did not follow appellant for a sufficient amount of time or for a sufficient distance to conclude that appellant committed a violation.

6

Only forty-five seconds elapsed from the point at which appellant passed the "Left Turn for Passing Only" sign to the point at which appellant stopped on the shoulder of the highway, which equates to approximately eight tenths of a mile, based on testimony that appellant was not speeding and assuming that appellant was traveling at the posted speed limit of sixty-five miles per hour. Additionally, the State Trooper actually followed appellant in the left lane for only twelve seconds before appellant began pulling over, which equates to approximately two tenths of a mile, assuming both appellant and the State Trooper were travelling at the posted speed limit at the time the State Trooper started following appellant.

Finally, we consider an additional factor—whether the defendant, by driving in the left lane, frustrated the purpose of the "Left Lane for Passing Only" signs, which is ostensibly to promote safety and prevent undue delay caused by slower moving vehicles. *See* Press Release, Tex. Dep't of Transp., *Coming Soon to a Highway Near You—"Left Lane for Passing Only" Signs* (Oct. 12, 2012), http://www.txdot.gov/inside-txdot/media-center/statewide-news/2012-archive/050-2012.html (last visited July 2, 2014) ("'The use of these signs will help ensure that vehicles travelling at the posted speed limit will not be impeded or forced to make excessive lane changes when encountering a slower vehicle.'"). The Texas Department of Transportation's press release suggests that an officer's reasonable suspicion could be founded on evidence that a defendant was impeding traffic or forcing other drivers to make excessive lane changes. The video in this case indicates, however, that appellant was neither impeding traffic nor putting other drivers' safety at risk by travelling in the left lane.

Although appellant was not "in the process of passing" another vehicle at the exact moment the State Trooper initiated the traffic stop, the State Trooper did not have reasonable suspicion that appellant committed the traffic violation of driving

7

in the left lane without passing because the video showed appellant completing a passing maneuver in close proximity to the "Left Turn for Passing Only" sign and increasing the distance between her car and the car she passed; the video showed that a white car merged into the middle lane, making it potentially unsafe for appellant to change lanes; the video showed that the State Trooper approached appellant at a high rate of speed, which could have caused her to slow down and hindered her ability to pass the white car in the middle lane; the video showed that the State Trooper followed appellant in the left lane for only two tenths of a mile; and the video showed that appellant was not impeding traffic or endangering other drivers' safety. The trial court erred when it denied appellant's motion to suppress.

Having determined that the trial court erred in denying appellant's motion to suppress, we now consider whether the error was harmful. Under Texas Rule of Appellate Procedure 44.2(a), if a trial court's error violated a defendant's constitutional rights, we must reverse the judgment of conviction unless we determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment. *Holmes v. State*, 323 S.W.3d 163, 173–74 (Tex. Crim. App. 2010). When, as here, the State contests a defendant's motion to suppress, the State preserves the option to use the challenged evidence against the defendant in a trial. *See id.* at 174. In this case, because the evidence seized from appellant's vehicle, namely the marijuana, was inculpatory and could have been used against appellant in a trial, we cannot determine beyond a reasonable doubt that the trial court's erroneous denial of appellant's motion to suppress did not contribute to appellant's decision to plead "guilty." *See id.*; *Paulea v. State*, 278 S.W.3d 861, 867 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd). This indicates that the trial court's erroneous ruling was indeed a contributing factor in appellant's conviction and punishment. Therefore, the error was harmful.

8

We sustain appellant's sole issue on appeal.

## III.    Conclusion

Because we cannot determine that the trial court's erroneous ruling, which violated appellant's Fourth Amendment rights, did not contribute to appellant's conviction, we reverse the trial court's judgment and remand for a new trial consistent with this opinion.


/s/        Marc W. Brown
           Justice

Panel consists of Justices Boyce, Christopher, and Brown.

Publish — TEX. R. APP. P. 47.2(b).