

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1189-14

### FRANCHESKA V. JAGANATHAN, Appellant

### v.

### THE STATE OF TEXAS

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTEENTH COURT OF APPEALS
### CHAMBERS COUNTY

KELLER, P.J., delivered the opinion of the Court in which KEASLER, HERVEY, ALCALA, RICHARDSON, and YEARY, JJ., joined. MEYERS, J., filed a dissenting opinion. JOHNSON and NEWELL, JJ., concurred.

Appellant passed a "Left Lane for Passing Only" sign and remained in the left lane without passing. The facts surrounding this conduct did not establish beyond question that appellant needed to remain in the left lane for safety purposes. Under these circumstances, we hold that the police officer had reasonable suspicion to conduct a traffic stop. Consequently, we reverse the judgment of the court of appeals.

## I. BACKGROUND

### A. The Incident and Trial Proceedings

The traffic stop at issue occurred mid-afternoon, while State Trooper Thomas Norsworthy was patrolling an eastbound section of Interstate 10. The relevant events were captured on video from the dashboard camera in Trooper Norsworthy's vehicle.

This section of Interstate 10 has three lanes. Trooper Norsworthy was driving in the left lane, going faster than the other cars on the road. As he approached an SUV in the left lane, the SUV moved into the middle lane. About twenty seconds later, he approached the next vehicle in the left lane, and that vehicle did not move over. Trooper Norsworthy then moved to the right lane and passed several vehicles in the middle and left lanes. While Trooper Norsworthy was in the right lane, a light-colored car that was quite some distance ahead of Trooper Norsworthy moved from the right lane into the middle lane. When that vehicle moved to the middle lane, it appears to have been just slightly ahead of appellant. It then pulled a little farther ahead.

It appears from the video that appellant's car was at the front of a short line of vehicles traveling in the left lane. Appellant passed a "Left Lane for Passing Only" sign. About four or five seconds later, while Trooper Norsworthy was still in the right lane, he passed the sign. Appellant's vehicle continued to travel in the left lane. Another four or five seconds later, Trooper Norsworthy moved out of the right lane, across the middle lane, and into the left lane. The Trooper then followed behind appellant's vehicle in the left lane for ten to twelve seconds. During this interval, the middle lane was clear of traffic, and appellant was not passing any other vehicles. Appellant turned on her left turn signal, then turned it off and turned on her right turn signal, and then moved into the middle lane. Trooper Norsworthy turned on his overhead lights, and the two vehicles pulled to the side of

the road.

During the course of the stop, Trooper Norsworthy smelled marijuana, searched appellant's vehicle, and found marijuana in the trunk. As a result of this incident, appellant was charged with possession of marijuana. She filed a motion to suppress, which was denied. Pursuant to an agreement, she pled guilty and was placed on deferred adjudication.

### B. Appeal

On appeal, appellant claimed that Trooper Norsworthy lacked reasonable suspicion to conduct a traffic stop. The court of appeals agreed.[1] From watching the video, the court of appeals concluded that appellant was increasing the distance between her car and a pickup truck behind her and that a white car had moved into the middle lane at the time appellant's vehicle passed the "Left Lane for Passing Only" sign.[2] The court of appeals speculated that the white car's movement into the middle lane "may have prevented appellant from moving safely into the middle lane."[3] The court of appeals also said that "the State Trooper's actions may have influenced appellant's behavior in a manner that prevented appellant from complying with the 'Left Lane for Passing Only' sign."[4] Specifically, the court of appeals thought that the fact that Trooper Norsworthy's vehicle approached appellant's vehicle "at a high rate of speed" was an event that "based on commonsense judgment and inferences of human behavior, could have caused appellant to slow down, effectively ending

---

[1] *Jaganathan v. State*, 438 S.W.3d 823 (Tex. App.–Houston [14th Dist.] 2014).

[2] *Id.* at 827.

[3] *Id.*

[4] *Id.*

appellant's ability to pass the white car that had merged into the middle lane."[5] The court of appeals also cited Trooper Norsworthy's testimony that it is generally not reasonable for an individual to pull in front of or next to a marked police car approaching at a higher rate of speed.[6]

Finally, the court of appeals concluded that Trooper Norsworthy "did not follow appellant for a sufficient amount of time or for a sufficient distance to conclude that appellant committed a violation."[7] The court observed that only forty-five seconds had elapsed from the point at which appellant passed the "Left Turn for Passing Only" sign and the point at which appellant stopped on the shoulder of the highway.[8] The court also stated that Trooper Norsworthy had "actually followed appellant in the left lane for only twelve seconds before appellant began pulling over."[9] The court of appeals also considered, as an additional factor, whether appellant frustrated the purpose of "Left Lane for Passing Only" signs and concluded that she had not, because she neither impeded traffic nor put other drivers' safety at risk.[10]

## II. ANALYSIS

An officer may make a warrantless traffic stop if the "reasonable suspicion" standard is satisfied.[11] Reasonable suspicion exists if the officer has "specific articulable facts that, when

---

[5] *Id.* at 827-28.

[6] *Id.* at 828.

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Guerra v. State*, 432 S.W.3d 905, 911 (Tex. Crim. App. 2014).

combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaging in criminal activity."[12] The Transportation Code requires that an operator of a vehicle "comply with an applicable official traffic-control device,"[13] including a sign.[14] Before an officer can have reasonable suspicion to believe that a defendant committed the traffic offense of failing to obey a "Left Lane for Passing Only" sign, the officer must be aware of facts that support a reasonable inference that the defendant drove past the sign before being pulled over.[15] The record in the present case establishes that appellant did in fact pass such a sign.

The State argues that the court of appeals erred in suggesting potential justifications for appellant's failure to move immediately out of the left lane upon passing the "Left Lane for Passing Only" sign. In the State's view, these potential justifications did not negate the existence of reasonable suspicion that an offense occurred. The State says that such matters might entitle a defendant to an instruction on necessity if she were being tried for a traffic violation, but it disputes their significance when the issue is whether an officer had reasonable suspicion to stop her.

We agree with the State. The question in this case is not whether appellant was guilty of the traffic offense but whether the trooper had a reasonable suspicion that she was. Appellant was clearly driving in the left lane without passing after driving past a sign that prohibited that conduct, so the real issue here is whether the facts surrounding that conduct somehow coalesced in a manner

---

[12] *Abney v. State*, 394 S.W.3d 542, 548 (Tex. Crim. App. 2013).

[13] TEX. TRANSP. CODE § 544.004(a).

[14] *Id.* § 541.304(1).

[15] *Abney*, 394 S.W.3d at 549.

that made it unreasonable for the trooper to think she was violating the law.

The court of appeals considered a number of facts shown in the video and concluded that the record did not support a finding of reasonable suspicion. There are three problems with the court's approach.

First, the court did not view the record in the light most favorable to the trial court's ruling. The court suggested reasons that appellant might have remained in the left lane, but these were just possibilities. While appellant might have thought it was unsafe to move over, it is not obvious from the video that it was unsafe. An officer's suspicion is not unreasonable just because facts surrounding a suspected offense might ultimately show a defense to conduct.

Second, there is a difference between what an officer sees during an ongoing event and what we see when reviewing a video. After watching the video many times, with the ability to stop the action and enlarge the image, we can say with some degree of confidence which cars were where, who was going faster than whom, and how the events transpired. Even with that ability, though, our view of the events does not exactly coincide with that of the court of appeals. We would be much closer to knowing what the officer observed if we were to view the video only one time, from start to finish, without stopping. But even then, we might not focus on what the officer focused on at the time of the stop.

Sometimes it will be obvious that otherwise illegal conduct is justified by surrounding circumstances. But a defense would matter only if the facts establishing it were so obvious that an objective officer viewing the situation would be unreasonable in failing to realize that the person's conduct was allowed by law. "A determination that reasonable suspicion exists . . . need not rule

out the possibility of innocent conduct."[16] The reasonable suspicion standard "accepts the risk that officers may stop innocent people."[17] The mere possibility that an act is justified will not negate reasonable suspicion.

By its own language, the court of appeals's opinion acknowledged only a possibility that appellant had a defense, either because the white car or the officer's car might have made it unsafe to move to the middle lane. These were only possibilities, and so it was reasonable for Trooper Norsworthy to suspect that appellant had violated the law.[18]

The third problem with the court of appeals's analysis is that it considered the purpose of the law against driving in the left lane without passing. Trooper Norsworthy was not required to consider the purpose of the law in deciding whether he believed appellant had violated it. Just as running a stop sign is illegal even if it can be done safely, driving in the left lane in violation of a posted sign is illegal even if it can be done safely.[19] In a different context, we have explained that, "[a]s long as an actual violation occurs, law enforcement officials are free to enforce the laws and

---

[16] *United States v. Arvizu*, 534 U.S. 266, 277 (2002).

[17] *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000).

[18] We also note that none of the court of appeals's hypothesized defenses were even potentially applicable to the ten-to-twelve second time period during which Trooper Norsworthy's car was behind appellant's car.

[19] Some statutes take the safety of conduct into account in defining whether conduct is illegal. *See*, *e.g.,* TEX. TRANSP. CODE § 545.363(a) ("An operator may not drive so slowly as to impede the normal and reasonable movement of traffic, except when reduced speed is necessary for safe operation or in compliance with law."). § 544.004(a) does not take the safety of conduct into account.

detain a person for that violation."[20]

We conclude that the court of appeals erred in holding that Trooper Norsworthy lacked reasonable suspicion to conduct a traffic stop. We reverse the judgment of the court of appeals and affirm the judgment of the trial court.

Delivered: September 16, 2015
Publish

---

[20] *Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992) (rejecting notion that a stop is illegal because it is pretextual). *See also Whren v. United States*, 517 U.S. 806 (1996) (rejecting the defendant's claim that a traffic stop based on probable cause that a traffic violation was committed is impermissible unless a reasonable officer would have been motivated to stop the car by a desire to enforce the traffic laws).