

NUMBER 13-18-00180-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

JOSE MARVIN VILLALTA,                                                    Appellant,

v.

THE STATE OF TEXAS,                                                    Appellee.

## On appeal from the County Court at Law No. 5
of Montgomery County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Perkes
Memorandum Opinion by Justice Longoria**

A jury found appellant Jose Marvin Villalta guilty of driving while intoxicated (DWI), enhanced to a class-A misdemeanor by a prior DWI conviction. *See* TEX. PENAL CODE §§ 49.04, 49.09(a) (West, Westlaw through 2017 1st C.S.). By one issue, Villalta argues the trial court erred by failing to grant his motion to suppress. We affirm.

## I. BACKGROUND[1]

On January 17, 2017, Trooper Ben Polansky of the Texas Highway Patrol was transporting an individual he had just arrested when he spotted Villalta driving his truck erratically down the highway. According to Trooper Polansky, Villalta was "swerving all over the road," nearly driving on the grass, and going back and forth between the lanes. Trooper Polansky pulled Villalta over and administered several standardized sobriety tests; Villalta performed some of the tests but refused to perform several others. Trooper Polansky observed that Villalta smelled of alcohol, his eyes were red and glassy, and he had "a [sic] expression to his face" that indicated he had been drinking. Based on these observations, Trooper Polansky arrested Villalta and obtained a blood warrant to retrieve a sample of Villalta's blood. The lab result indicated that Villalta's blood-alcohol level was 0.243.

Trooper Polansky's patrol vehicle had a dashcam that could record video both in front of the car and inside the car. The dashcam was actively recording as Trooper Polansky followed Villalta and subsequently pulled him over. Villalta filed a motion to suppress, arguing the dashcam footage proved he was pulled over without reasonable suspicion. More specifically, Villalta argued that the video contradicts Trooper Polansky's testimony because the video does not clearly show Villalta swerving between lanes or nearly driving on the grass. The trial court denied the motion to suppress.

When asked at trial about the discrepancy between his testimony and the dashcam footage, Trooper Polansky explained that the distance between his car and Villalta's truck

---

[1] This case is before this Court on transfer from the Ninth Court of Appeals in Beaumont pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2017 1st C.S.).

made it hard to see on the video what Trooper Polansky saw in person. More importantly, Trooper Polansky averred that because he was transporting an arrested individual, he had the interior camera recording inside his car. When he began following Villalta, the exterior camera began recording in front of his vehicle. However, according to Trooper Polansky, "[w]hen you turn on the interior camera it's harder to see what's going on in both cameras." When both interior and exterior cameras are recording, half of the recording shows the interior camera view and the other half shows the exterior camera view. This makes "everything smaller so you can't really see," and the video becomes "grainy" and less clear. Thus, Trooper Polansky testified that he saw things that are not clearly depicted in the video, such as Villalta swerving erratically. Villalta's driving was "so dangerous on the roadway" that Trooper Polansky made an exception and pulled him over, even though Trooper Polansky testified he normally does not stop vehicles when he is transporting an arrested individual.

The jury found Villalta guilty of DWI. *See id.* § 49.04. The jury assessed punishment at 120 days' confinement in the Montgomery County Jail and a $1,000 fine. The trial court pronounced the sentence as assessed by the jury. This appeal ensued.

## II. MOTION TO SUPPRESS

In his sole issue, Villalta argues that the trial court erred by failing to grant his motion to suppress.

### A. Standard of Review and Applicable Law

In reviewing a trial court's ruling on a motion to suppress, we employ a bifurcated standard, giving almost total deference to a trial court's determination of historic facts and mixed questions of law and fact that rely upon the credibility of a witness, but we apply a

3

de novo standard of review to pure questions of law and mixed questions that do not depend on credibility determinations. *See State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013). The record is reviewed in the light most favorable to the trial court's determination, and the judgment will be reversed only if it is arbitrary, unreasonable, or "outside the zone of reasonable disagreement." *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).

> Ordinarily, a police officer may not conduct a seizure and search of a suspect without probable cause that a crime has been committed. An exception to the requirement of probable cause allows the police to make a *Terry* stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause. Reasonable suspicion is a less demanding standard than probable cause, but the officer still must be able to articulate something better than an inchoate suspicion or hunch.

*In re A.T.H.*, 106 S.W.3d 338, 343 (Tex. App.—Austin 2003, no pet.) (internal citations and quotation marks omitted); *see Derichsweiler v. State*, 348 S.W.3d 906, 916 (Tex. Crim. App. 2011) (observing that the reasonable suspicion standard is much lower than the probable cause standard because a "brief investigatory detention constitutes a significantly lesser intrusion upon the privacy and integrity of the person" compared to an arrest); *see also Terry v. Ohio*, 392 U.S. 1, 19 (1968).

**B. Discussion**

Villalta argues that Trooper Polansky lacked reasonable suspicion to pull him over. Villalta concedes that if he were "driving the way described by Trooper Polansky, [Villalta] would have no remedy available." But, as Villalta points out, Trooper Polansky acknowledged during the trial that the video recording from the dashcam does not show Villalta committing any discernible traffic violations or any visible indications of

4

intoxication. Thus, Villalta argues that the trial court erred in failing to grant his motion to suppress because the video actively contradicted Trooper Polansky's testimony. *See Carmouche v. State*, 10 S.W.3d 323, 332 (Tex. Crim. App. 2000) (concluding that the videotape evidence was not "an evaluation of credibility and demeanor" that the trial court could credit because the videotape "present[ed] indisputable evidence contradicting essential portions" of the police officer's testimony concerning whether the defendant gave his consent to a search).

However, the Texas Court of Criminal Appeals has addressed a similar argument before. *See Jaganathan v. State*, 479 S.W.3d 244, 248 (Tex. Crim. App. 2015). The Fourteenth Court of Appeals in Houston concluded that the record did not support a finding of reasonable suspicion because the video evidence contradicted the officer's testimony and failed to distinctly show a traffic violation. *See id*. But the court of criminal appeals observed that

> there is a difference between what an officer sees during an ongoing event and what we see when reviewing a video. After watching the video many times, with the ability to stop the action and enlarge the image, we can say with some degree of confidence which cars were where, who was going faster than whom, and how the events transpired. Even with that ability, though, our view of the events does not exactly coincide with that of the court of appeals. We would be much closer to knowing what the officer observed if we were to view the video only one time, from start to finish, without stopping. But even then, we might not focus on what the officer focused on at the time of the stop.

> Sometimes it will be obvious that otherwise illegal conduct is justified by surrounding circumstances. But a defense would matter only if the facts establishing it were so obvious that an objective officer viewing the situation would be unreasonable in failing to realize that the person's conduct was allowed by law. "A determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct." *United States v. Arvizu,* 534 U.S. 266, 277 (2002). The reasonable suspicion standard "accepts the risk that officers may stop innocent people." *Illinois v. Wardlow,* 528 U.S. 119,

5

125 (2000). The mere possibility that an act is justified will not negate reasonable suspicion.

*Id.* at 248. The Court ultimately reversed, finding that the record supported reasonable suspicion even though the video evidence did not directly support the officer's testimony. *See id.* We find the analysis in *Jaganathan* informative.

The present case is unlike *Carmouche* where the video evidence clearly contradicted the officer's testimony. *See Carmouche*, 10 S.W.3d at 332. In *Carmouche*, the officer testified that the defendant raised his arms in a display of consent in response to the officer's request to search; however, the video showed the defendant raised his hands above his head only because he was surrounded by four police officers that instructed him to do so. *See id.* On the other hand, Villalta was pulled over because Trooper Polansky testified that he saw him driving erratically; according to Trooper Polansky, he saw Villalta nearly drive on the grass and he saw him swerve between multiple lanes various times. Trooper Polansky's testimony lists specific, articulable facts that would support a finding of reasonable suspicion. *See In re A.T.H.*, 106 S.W.3d at 343. And while the video evidence does not directly corroborate Trooper Polansky's testimony, the video does not directly disprove or contradict his testimony either. *Cf. Carmouche*, 10 S.W.3d at 332. We have reviewed the video; because of the size and quality of the video, it is not particularly informative. While we cannot make out any discernible erratic behavior in the video, we also cannot say that the video contradicts Trooper Polansky's testimony concerning Villalta's driving, unlike in *Carmouche* where the video specifically contradicted the officer's testimony regarding the defendant's allegedly voluntary consent. *See id.*

6

The trial court could have reasonably credited Trooper Polansky's testimony over the video recording, recognizing that "there is a difference between what an officer sees during an ongoing event and what we see when reviewing a video." *Jaganathan*, 479 S.W.3d at 248; *see Dixon*, 206 S.W. 3d at 590; *see also Winward v. State*, No 09-17-00149-CR, 2019 WL 575954, at *3 (Tex. App.—Beaumont Feb. 13, 2019, pet. filed) (mem. op., not designated for publication) (observing that the trial court could reasonably resolve any discrepancies between an officer's testimony and dashcam footage in favor of the officer's testimony "[b]ecause the trooper was in a better position in the patrol car that differed from the camera's"). The trial court did not err in denying Villalta's motion to suppress. *See Kerwick*, 393 S.W.3d at 273. We overrule Villalta's sole issue.

### III. CONCLUSION

We affirm the judgment of the trial court.[2]

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
18th day of April, 2019.

---

[2] All pending motions, if any, are dismissed as moot.