**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-18-00251-CR**
_____

**DONALD RAYSHON COLLIER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court**
**Jefferson County, Texas**
**Trial Cause No. 17-26695**

**MEMORANDUM OPINION**

Donald Rayshon Collier[1] appeals his conviction for possessing cocaine.[2] In

three issues, Collier challenges the trial court's rulings denying his motion to

suppress. According to Collier, a state trooper violated his Fourth Amendment rights

---

[1] The record shows that Donald Rayshon Collier is also known as Donald Rashawn Collier.

[2] *See* Tex. Health & Safety Code Ann. § 481.115(c).

1

by (1) stopping a car he was a passenger in, (2) unduly prolonging the stop, and (3) arresting him for warrants that were no longer active. We hold Collier's issues lack merit and affirm the trial court's judgment.

## Background

In 2017, a grand jury returned an indictment charging Collier with possessing between one and four grams of cocaine. The indictment was based on drugs a state trooper found incident to Collier's arrest during a traffic stop. About two months before the trial, Collier moved to suppress the evidence obtained incident to his arrest because the trooper who stopped the car allegedly violated Collier's rights under the Fourth Amendment, article I, section 9 of the Texas Constitution, and article 38.23 of the Code of Criminal Procedure.[3]

The State opposed the motion. At a hearing, the State argued that Trooper Dane Sted, the state trooper who conducted the stop, obtained the evidence in a legal manner and, that even if he did not, the law did not require the trial court to suppress the evidence. To support its arguments, the State presented testimony from Trooper Sted, as well as dash-cam video from the stop.

---

[3] U.S. CONST. amend. IV; Tex. Const. art. I, § 9; Tex. Code Crim. Proc. Ann. art. 38.23.

The evidence shows Trooper Sted arrested Collier about thirty-one minutes into the stop shortly after learning that Collier had warrants out for his arrest. According to the trooper, in October 2016, he saw a car make unsafe lane changes without signaling the changes the car made between two lanes.[4] The trooper explained he stopped the car for the traffic violations and saw two individuals in the car—the driver and Collier.[5] According to the trooper, the driver handed him a driver's license, proof of insurance, and registration.

Trooper Sted stated the driver seemed extremely nervous during the stop. The driver volunteered that he had recently been pulled over and his car searched. The trooper asked the driver whether he needed to know about anything in the car. The driver replied he was not carrying anything illegal and without being asked, told the trooper he could search the car. Trooper Sted testified the fact the driver volunteered to allow the search before he asked for permission struck him as "very unusual." The trooper also testified the driver voluntarily told him that the paneling around the CD changer in the car was worn.

Seven minutes into the stop, Trooper Sted accepted the driver's offer and searched the car, a process that took around eight minutes. When searching the car,

---

[4] *See, e.g.*, Tex. Transp. Code Ann. §§ 545.060, 545.104(a), 545.106.
[5] No one asked the trooper to identify the driver's name in the hearing.

3

the trooper noticed the paneling just above the car's CD changer was loose. According to the trooper, the condition of the car's interior caused him to suspect there might be contraband hidden inside. Trooper Sted explained the circumstances—the condition of the car's interior and the fact the driver was extremely nervous—justified a more thorough search of the car. Trooper Sted testified he decided to ask a dispatcher to send a canine unit to the scene because he did not want to start removing parts of the car, damage it, or detain the car's occupants any longer than necessary to determine whether the car was being used to carry contraband.

While waiting for the unit, the trooper learned both the driver and Collier had criminal histories involving drugs. The trooper asked the dispatcher to find out if the driver or Collier had warrants out for their arrest. Seven minutes later, the dispatcher told the trooper Collier was wanted on misdemeanor warrants issued by the City of Beaumont. Trooper Sted asked the dispatcher to confirm the warrants. Nine minutes later, the dispatcher told the trooper that the warrants were valid.

Trooper Sted left his patrol car and placed Collier under arrest. Following the arrest, Trooper Sted searched Collier and found a small bag containing cocaine in Collier's shoe. On cross-examination, Collier presented exhibits showing that, on the day of Collier's arrest, the warrants issued by the City of Beaumont had been

4

"cleared." Trooper Sted agreed the exhibits showed the warrants were not active when he arrested Collier. But the trooper emphasized the dispatcher told him otherwise the day Collier's arrest occurred.

No other witnesses testified in the hearing. At the end of the hearing, the trial court overruled Collier's motion to suppress. Afterwards, the trial court did not provide the parties with any findings of fact or conclusions of law, but the record does not show any findings were requested. After the trial court overruled the motion, Collier pleaded guilty to possessing cocaine, reserving the right to appeal the trial court's ruling on his motion. Two months later, the trial court sentenced Collier to serve a five-year sentence.[6]

### Standard of Review

We review rulings on motions to suppress evidence under a bifurcated standard of review.[7] At a hearing on a motion to suppress, "the trial judge is the sole trier of fact and judge of credibility of witnesses and the weight to be given to their testimony."[8] For that reason, reviewing courts give the trial court almost complete

---

[6] Possessing between one and four grams of cocaine is a third-degree felony. *See* Tex. Health & Safety Code Ann. § 481.115(c). The reporter's record of the punishment hearing shows Collier pleaded true to one allegation that enhanced the range available for his punishment to the punishment available for second-degree felonies—two to twenty years in prison. *See* Tex. Penal Code Ann. § 12.42(a).

[7] *Lerma v. State*, 543 S.W.3d 184, 189-90 (Tex. Crim. App. 2018).

[8] *Id.* at 190.

deference when determining a fact turned on the credibility of a witness. That said, we conduct a *de novo* review about whether those facts established the trooper had an objectively reasonable basis to suspect a crime occurred.[9]

Here, the trial court did not issue written findings. So we view the evidence in the light that favors the trial court's ruling and assume the trial court made the implied findings needed to support its ruling if the court's implied findings are supported by the record.[10] We will affirm the trial court's ruling if it was correct under any theory of law.[11]

Analysis

On appeal, Collier argues the trial court should have granted his motion to suppress because Trooper Sted violated his Fourth Amendment rights by (1) stopping the car, (2) unduly prolonging the stop, and (3) arresting him on warrants that were no longer valid. According to Collier, because the trooper violated his rights under the Fourth Amendment in one of these three ways, the evidence the trooper discovered is "fruit of the poisonous tree"[12] and is evidence the trial court should have suppressed.

_____

[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *See Wong Sun v. United States*, 371 U.S. 471, 485-86 (1963).

The Fourth Amendment to the United States Constitution protects persons against unreasonable searches and seizures.[13] An arrest is "the quintessential seizure" of a person under the Fourth Amendment.[14] "A traffic stop for a suspected violation of law is a 'seizure' of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment."[15]

If the police obtain evidence by violating a suspect's Fourth Amendment rights, the federal exclusionary rule generally precludes the State from using the evidence in a criminal proceeding against the party whose rights were violated.[16] And the rule extends not only to evidence obtained as a direct result of an illegal seizure, but also to evidence obtained as an indirect result of an illegal seizure. That evidence is often called the "fruit of the poisonous tree."[17] We note, however, that exceptions exist to the general rule just discussed; sometimes, the exception nevertheless allows the evidence to be admitted even if a Fourth Amendment violation occurred.[18]

---

[13] U.S. CONST. amend. IV; *see Lerma*, 543 S.W.3d at 190.

[14] *California v. Hodari D.*, 499 U.S. 621, 624 (1991) (cleaned up).

[15] *Heien v. N. Carolina*, 574 U.S. 54, 60 (2014).

[16] *Illinois v. Krull*, 480 U.S. 340, 347 (1987).

[17] *See Wong Sun*, 371 U.S. at 485-86; *Smith v. State*, 542 S.W.2d 420, 422 (Tex. Crim. App. 1976).

[18] *Utah v. Strieff*, 136 S.Ct. 2056, 2061 (2016) (recognizing the "independent source doctrine," "the inevitable discovery doctrine," and the "attenuation doctrine" are exceptions to the exclusionary rule).

*Initial Traffic Stop*

First, we will address whether it was reasonable for Trooper Sted to stop the car Collier occupied. Police officers may conduct warrantless traffic stops when the reasonable suspicion standard is satisfied.[19] "Reasonable suspicion exists if the officer has specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaging in criminal activity."[20] "The test for reasonable suspicion is an objective one that focuses solely on whether an objective basis exists for the detention and disregards the officer's subjective intent[,]" so it hinges on "the totality of the circumstances" leading to the officer's decision that launched the stop.[21]

The evidence supports the trial court's implied finding that Trooper Sted witnessed the driver he stopped commit several traffic violations before initiating the stop. Under Texas law, drivers may not change lanes unless the driver can change lanes safely.[22] Texas law also requires drivers to signal their intention to change

---

[19] *Jaganathan v. State*, 479 S.W.3d 244, 247 (Tex. Crim. App. 2015).
[20] *Id.* (cleaned up).
[21] *State v. Kerwick*, 393 S.W.3d 270, 274 (Tex. Crim. App. 2013).
[22] Tex. Transp. Code Ann. § 545.060(a).

lanes.[23] According to Trooper Sted, he witnessed the car make two unsafe lane changes without displaying a signal. The dash-cam video aligns with Trooper Sted's testimony. Even more, none of the evidence Collier introduced contradicts the trial court's conclusion that the trooper witnessed a traffic violation occur.

*Prolonged Detention*

Next, we address whether Trooper Sted unduly prolonged the stop. Generally, the officer's investigation into a traffic stop must reasonably relate to the purpose of the stop, so the officer may not prolong the stop beyond the time reasonably required to issue a ticket.[24] Law enforcement officials may request information from the driver, including the driver's license, the registration for the car, and proof of insurance during routine stops.[25] Officers may also check the information they get from drivers during stops, using equipment in their cars, such as computers, and calling dispatchers for that purpose.[26] And officers may ask drivers and passengers about matters unrelated to the traffic violation as long as the officer's questions do not measurably extend the duration of the stop.[27]

---

[23] *Id.* §§ 545.104(a), 545.106; *see, e.g.*, *Leming v. State*, 493 S.W.3d 552, 559-60 (Tex. Crim. App. 2016).

[24] *Lerma*, 543 S.W.3d at 190.

[25] *Id.*

[26] *Id.*

[27] *Id.*

9

Because traffic stops can be dangerous, an officer may take certain precautions to complete the stop safely, including conducting an on-scene investigation into some other crime when the officer develops information during the stop that creates a reasonable suspicion some other crime involving the individuals the officer stopped occurred.[28] In conducting that investigation, no per se rule exists requiring the officer to first check the accuracy of driver's license information before the officer questions the individuals removed from a car.[29] And an officer's decision to question both occupants before checking the accuracy of the information the driver an any passengers gave the officer is particularly reasonable when the officer is the only law enforcement official present since he has to control the scene during the stop.[30]

If, during the stop, an officer develops reasonable suspicion that an individual he stopped engaged in some other criminal activity, the officer may, when reasonable, decide to extend the investigation for a reasonable time to further investigate and to rule out (or in) whether some other criminal activity the officer suspected in fact occurred.[31] Whether the duration of the detention was reasonable

[28] *See Kothe v. State*, 152 S.W.3d 54, 63-64 (Tex. Crim. App. 2004).

[29] *Lerma*, 543 S.W.3d at 190-91.

[30] *Id.* at 196-97.

[31] *Martinez v. State*, 500 S.W.3d 456, 468 (Tex. App.—Beaumont 2016, pet. ref'd).

hinges on "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly[.]"[32]

As mentioned, the evidence shows Trooper Sted arrested Collier about thirty-one minutes into the stop. The trooper was alone at the beginning of the stop and no other law enforcement officials were present to assist the trooper in controlling the scene before the unit carrying the canine arrived. During the stop, the driver of the car told Trooper Sted (without being asked) that the trooper could search the car and that the car had a loose panel near the CD changer inside. On this record, the question about whether the driver volunteered to allow the trooper to search the car was a matter of fact, and the trial court, as the factfinder, had the right to credit the trooper's testimony about that fact as well as the trooper's testimony that the driver of the car seemed extremely nervous. Viewed objectively, the evidence shows the trooper's suspicions about other crime were reasonable based on specific facts that he articulated in the hearing. Thus, the trooper did not unreasonably prolong the detention by searching the car and calling a canine unit to the scene.

The search took less than ten minutes. During the search, Trooper Sted noticed the paneling around the CD changer was loose and there was unusual wear on the car's interior. After Trooper Sted searched the car, he spent another six minutes

---

[32] *United States v. Sharpe*, 470 U.S. 675, 686 (1985).

questioning the driver, finding out where Collier and the passenger had been and where they were headed. The trooper testified he thought the stories each man gave him were so consistent they were rehearsed. According to Trooper Sted, he told the driver he wanted to have a dog sniff the car, the driver agreed, and they waited at the scene for about fifteen minutes for the canine unit to arrive.[33]

While waiting for the canine unit, Trooper Sted called the dispatcher to check for warrants. After a short delay, the dispatcher told Trooper Sted that Collier had warrants out for his arrest. Trooper Sted asked the dispatcher to confirm whether the warrants were still valid. Several minutes later, the dispatcher told the trooper the warrants were still active.

Viewing the facts in the light most favorable to the trial court's ruling, we conclude the stop at issue was not unduly prolonged. Instead, the evidence shows the trooper investigated his suspicions, which were objectively reasonable, in a manner designed to dispel them at each step of the investigation that occurred. We conclude the trooper did not subject Collier to a detention that violated his Fourth Amendment rights.

---

[33] *Matthews v. State*, 431 S.W.3d 596, 603-04 (Tex. Crim. App. 2014) ("One reasonable method of confirming or dispelling the reasonable suspicion that a vehicle contains drugs is to have a trained drug dog perform an 'open air' search by walking around the car.").

*Arrest for Outstanding Warrants*

Last, we must decide whether the trial court should have suppressed the evidence Trooper Sted discovered when he arrested Collier because Collier's warrants were no longer active on the day the trooper arrested him. On appeal, we note that Collier has not argued the arrest violated the Texas Constitution or the Texas exclusionary rule.[34] Thus, given Collier's argument, we restrict our review to whether Collier's arrest violated the Fourth Amendment.[35]

Usually, the Fourth Amendment requires police officers to have probable cause or a warrant before they may make an arrest.[36] "When a probable-cause determination [is] based on reasonable but mistaken assumptions, the person subjected to a search or seizure has not necessarily been the victim of a constitutional violation."[37] To resolve Collier's issue, we assume (without deciding) the trooper violated Collier's Fourth Amendment rights by executing inactive warrants. But just because we assume the arrest on inactive warrants violated Collier's rights, the federal exclusionary rule does not necessarily automatically exclude the evidence

---

[34] Tex. Code Crim. Proc. Ann. art. 38.23.

[35] *See* Tex. R. App. P. 38.1(f), (i), 47.1; *Frazier v. State*, 115 S.W.3d 743, 746 n.5 (Tex. App.—Beaumont 2003, no pet.).

[36] *Herring v. United States*, 555 U.S. 135, 136 (2009).

[37] *Id.* at 139.

that Collier had contraband on him if an exception to the rule applies under the circumstances at issue here.

To trigger the federal exclusionary rule, "police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system."[38] For example, the rule does not require a trial court to suppress evidence when the evidence "is discovered by officers in the course of actions that are taken in good-faith and in the reasonable, though mistaken, belief that they are authorized."[39] So when a police officer has objectively relied on erroneous information that an arrest warrant is active by looking at computerized information from a database maintained by a court or a police employee, the belief a warrant is active is reasonable. Thus, the federal exclusionary rule does not apply to such evidence, when it is discovered incident to an individual's arrest.[40]

In Collier's case, the evidence shows Trooper Sted reasonably relied on the information he received from his dispatcher about the status of Collier's warrants. While the dispatcher was mistaken, the trial court was entitled to find that Trooper

---

[38] *Id.* at 144.

[39] *United States v. Lopez-Valdez*, 178 F.3d 282, 289 (5th Cir. 1999) (cleaned up).

[40] *See Herring*, 555 U.S. at 136-37; *Arizona v. Evans*, 514 U.S. 1, 14-16 (1995).

14

Sted acted in good faith by relying on the information the dispatcher gave him about the warrant. On this record, the evidence does not show the fact the information the dispatcher had and relayed to the trooper about the warrants was inaccurate was the result of any ordinary or recurring police (or even judicial) negligence. Thus, even if a Fourth Amendment violation occurred because the trooper arrested Collier on an inactive warrant, the federal exclusionary rule did not require the trial court to suppress the contraband the trooper found on Collier while placing him under arrest.

Conclusion

For the reasons explained above, Collier's three issues are overruled and the trial court's judgment is

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on January 23, 2020
Opinion Delivered April 29, 2020
Do Not Publish

Before Kreger, Horton and Johnson, JJ.

15