**Opinion filed October 23, 2025**



## In The

# Eleventh Court of Appeals

_____

## No. 11-23-00223-CR

_____

### RICARDO ALBERTO MEDINA, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the County Court at Law No. 2**
**Midland County, Texas**
**Trial Court Cause No. CR-175,820**

**M E M O R A N D U M   O P I N I O N**

The jury convicted Appellant, Ricardo Alberto Medina, of the Class B misdemeanor offense of driving while intoxicated. *See* TEX. PENAL CODE ANN. § 49.04(a), (b) (West Supp. 2024). The trial court assessed his punishment at 180 days in the Midland County Jail and a $2,000 fine. However, the trial court suspended imposition of the confinement portion of the sentence and placed

Appellant on community supervision for twelve months. In two issues, Appellant asserts that the trial court erred by denying his motion to suppress evidence and by including fines in the bill of costs. We modify the bill of costs and affirm the trial court's judgment.

*Background Facts*

On May 9, 2021, Corporal Daniel Stickel of the Midland County Sheriff's Office was working patrol. Around 1:00 a.m., Corporal Stickel observed a white pickup traveling with a defective headlight, which was "out or not fully operational." Corporal Stickel turned his patrol unit around and initiated a traffic stop. While following the vehicle, Corporal Stickel observed that the driver of the vehicle, identified as Appellant, also failed to maintain a single lane.

When he approached the vehicle, Corporal Stickel smelled "the odor of an alcoholic beverage." He asked Appellant to get out of the vehicle so that he could further the investigation by conducting field sobriety tests. After conducting the field sobriety tests, Corporal Stickel concluded that Appellant had operated the vehicle while intoxicated and placed him under arrest.

A warrant was signed to obtain a specimen of Appellant's blood for testing. Testing revealed that Appellant had a blood alcohol concentration of 0.104, which is over the legal limit of 0.08. *See* PENAL § 49.01(2)(B) (West 2011).

*Analysis*

*Motion to Suppress*

In his first issue, Appellant asserts that the trial court erred by denying his motion to suppress. Appellant filed a motion to suppress "all evidence allegedly attributable to [Appellant], violating his rights as guaranteed under both the Federal and State Constitutions, respectively, as well as the Texas Code of Criminal

Procedure." He asserted that the officer did not have reasonable suspicion for initiating a traffic stop. After a hearing, the trial court denied Appellant's motion.

"We review a trial court's ruling on a motion to suppress under a bifurcated standard." *State v. Arellano*, 600 S.W.3d 53, 57 (Tex. Crim. App. 2020). "We afford almost total deference to a trial court's findings of historical fact and determinations of mixed questions of law and fact that turn on credibility and demeanor if they are reasonably supported by the record." *Id.* "We review *de novo* a trial court's determination of legal questions and its application of the law to facts that do not turn upon a determination of witness credibility and demeanor." *Id.* "The trial court's ruling will be sustained if it is correct on any applicable theory of law and the record reasonably supports it." *Id.* When the record is silent as to the reasons for the trial court's ruling, we infer the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008).

"An officer may make a warrantless traffic stop if the 'reasonable suspicion' standard is satisfied." *Jaganathan v. State*, 479 S.W.3d 244, 247 (Tex. Crim. App. 2015). "Reasonable suspicion exists if the officer has 'specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaging in criminal activity.'" *Id.* (quoting *Abney v. State*, 394 S.W.3d 542, 548 (Tex. Crim. App. 2013)). The likelihood of criminal activity required for reasonable suspicion need not rise to the level required for probable cause. *State v. Kerwick*, 393 S.W.3d 270, 273–74 (Tex. Crim. App. 2013). The reasonable-suspicion standard requires only "some minimal level of objective justification" for the stop. *Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012) (quoting *Foster v.*

3

*State*, 326 S.W.3d 609, 614 (Tex. Crim. App. 2010)). This is an objective inquiry that disregards the subjective intent of the officer and looks, instead, to whether an objectively justifiable basis for the detention existed. *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). "If an officer has a reasonable suspicion that a person has committed a traffic violation, the officer may conduct a traffic stop." *State v. Hardin*, 664 S.W.3d 867, 872 (Tex. Crim. App. 2022).

Corporal Stickel testified that when he observed Appellant's vehicle at approximately 1:00 a.m., the driver's side headlight appeared to be "out or not fully operational." At the hearing, the State played a portion of the dashcam video from Corporal Stickel's patrol unit. Appellant contends that the dashcam video clearly shows that the driver's side headlight on his vehicle was working. On direct examination, the State asked Corporal Stickel if he had reviewed the video, and if he continued to believe that the headlight was out. Corporal Stickel replied in the affirmative to this question. Corporal Stickel elaborated further by stating he did not believe that the headlight was fully operational, and that the dashcam video might have been showing the reflection of the headlights from Corporal Stickel's patrol unit upon Appellant's driver's side headlight.

On cross-examination, Corporal Stickel testified that he believed that the driver's side headlight on Appellant's vehicle was defective. He testified that he believed that the headlight was out at the time of the stop, but after reviewing the video, he stated that "it is possible that the light was dim." He clarified that he "believed the light to be defective and not fully functional, fully operational." He did not recall if he later examined the front of Appellant's vehicle to determine the status of the driver's side headlight. On redirect examination, Corporal Stickel confirmed that he "reasonably believed that the light was out."

4

At the end of the hearing, the trial court announced the basis for its ruling as follows:

> All right. Yeah, the state of the law doesn't really have anything to do with the lights at this point as long as the officer reasonably believes that he's witnessed a violation, then I think that's all that he needs.
>
> In looking at the videotape and applying that statute to this case, there is obviously something different about the passenger's side headlamp and the driver's side headlamp. It doesn't appear to be out, but there is something different in how they're illuminated. And I don't think you need to be a luminosity -- I like that word, by the way -- a luminosity expert to see that. But there is something different about the lights.[1] And so I think there is reasonable belief that's certainly a plausible explanation for the stop. And so I'm going to deny the motion to suppress with regard to this case.

Because we conclude that the matter concerning Appellant's driver's side headlight is dispositive, we do not address Corporal Stickel's observation that Appellant's vehicle was weaving after he started following Appellant.

The Texas Transportation Code provides that:

(a) A motor vehicle shall be equipped with at least two headlamps.

(b) At least one headlamp shall be mounted on each side of the front of the vehicle.

TEX. TRANSP. CODE ANN. § 547.321(a)(b) (West 2022). The Transportation Code further provides that:

(a) A vehicle shall display each lighted lamp and illuminating device required by this chapter to be on the vehicle:

(1) at nighttime; and

---

[1] We have reviewed the video of the traffic stop and we agree with the trial court's assessment of what is depicted in the video. Appellant's passenger side headlight appears to be much brighter than the driver's side headlight.

(2) when light is insufficient or atmospheric conditions are unfavorable so that a person or vehicle on the highway is not clearly discernible at a distance of 1,000 feet ahead.

*Id.* § 547.302(a).

It is well-settled that a traffic violation committed in an officer's presence authorizes an initial stop. *Hardin*, 664 S.W.3d at 872; *Armitage v. State*, 637 S.W.2d 936, 939 (Tex. Crim. App. 1982). The State is not required to show that the defendant actually committed a traffic violation; instead, the relevant inquiry is whether the officer had reasonable suspicion that a violation occurred. *Jaganathan*, 479 S.W.3d at 247; *State v. Charles*, 693 S.W.3d 825, 834 (Tex. App.—Austin 2024, no pet.); *Tex. Dep't of Pub. Safety v. Fisher*, 56 S.W.3d 159, 163 (Tex. App.—Dallas 2001, no pet.). Appellant acknowledges that the State does not have to show an actual offense was committed but argues that in this case there was no reasonable belief or objective justification for the stop.

Corporal Stickel testified that at the time of the stop, he believed the driver's side headlight was out on Appellant's vehicle. After reviewing the dashcam video, Corporal Stickel explained that the headlight from his patrol unit could have reflected onto Appellant's vehicle to make it appear that Appellant's headlight was working. He later acknowledged that it was possible that the headlight was on but not fully operational.

There are other cases that have dealt with similar circumstances. In *Rentrop v. State*, the defendant was stopped for a traffic violation because the arresting officer observed that he only had one working headlight. No. 09-14-00060-CR, 2015 WL 993477, at *1 (Tex. App.—Beaumont March 4, 2015, no pet.) (mem. op., not designated for publication). The defendant argued that the dashcam video showed that the defendant's headlight was illuminated. *Id.* at *6. The officer acknowledged that "something yellow on the driver's side can be seen in the video and that a

vehicle's headlight is made of reflective material" but maintained that the driver's side headlight was not operational. *Id.* at 7. The trial court determined that the officer provided credible testimony and that he observed that the headlight was not illuminated. *Id.* Giving the required deference to the trial court's findings on the evaluation of credibility and demeanor of a witness, the Ninth Court of Appeals concluded that the trial court did not abuse its discretion in finding that the officer observed that the driver's side headlight of the vehicle was not properly illuminated. *Id.*

In *Manyou v. State*, the officer observed a vehicle with a defective driver's side headlight. No. 05-05-00161-CR, 2006 WL 2664281, at *5 (Tex. App.—Dallas Sept. 18, 2006, pet. ref'd) (not designated for publication). The beam emanating from the headlight was pointed "straight down and not casting forth its beam forward 1000 feet." *Id.*; *see* TRANSP. § 547.302(a). The Fifth Court of Appeals concluded that the officer's observation was sufficient to give rise to reasonable suspicion to believe that the defendant was violating the Transportation Code. *Manyou*, 2006 WL 2664281, at *5.

Here, Corporal Stickel testified that at the time of the stop, he believed the driver's side headlight was out on Appellant's vehicle. As we have noted, the trial court found at the conclusion of the suppression hearing that the driver's side headlight was illuminated differently than the passenger side headlight. Our review of the dashcam video also leads us to conclude that there is a difference in illumination between the two headlamps in that the passenger side headlight was much brighter than the driver side headlight at the moment that the two vehicles met on the roadway.

Therefore, as in *Rentrop* and *Manyou* the State established that Corporal Stickel had a reasonable suspicion to justify the stop based upon his observation of

what he believed to be a violation of the Transportation Code. *See* TRANSP. § 547.302(a). In this regard, Appellant is incorrect in his assertion that the dashcam video refutes Corporal Stickel's observation. As the trial court noted, there was an obvious difference on the dashcam video in the brightness of the headlights. Thus, the trial court did not err in denying Appellant's motion to suppress because Corporal Stickel had an objectively justifiable basis for initiating the traffic stop. *See Derichsweiler*, 348 S.W.3d at 914. We overrule Appellant's first issue.

*Bill of Costs*

In his second issue, Appellant argues that the trial court erred in including two fines in the bill of costs. The amended bill of costs includes the $2,000 fine assessed by the trial court at sentencing and a $100 "non suspension fine." Appellant cites *Williams v. State* for the proposition that fines should not be included in the bill of costs. 495 S.W.3d 583, 591 (Tex. App.—Houston [1st Dist.] 2016), *pet. dism'd, improvidently granted*, No. PD-0947-16, 2017 WL 1493488, at *1 (Tex. Crim. App. Apr. 26, 2017) (per curiam) (not designated for publication). Appellant asks us to modify the bill of costs to delete the fines. *See Brumfield v. State*, 641 S.W.3d 568, 583 (Tex. App.—Tyler 2022, pet. ref'd) (relying on *Williams*). The State agrees that fines should not be included in the bill of costs.

Neither the $2,000 fine assessed by the trial court at sentencing nor the $100 "non suspension fine" should have been included in the bill of costs. *See Williams*, 495 S.W.3d at 591. As a result, we modify the amended bill of costs to delete both fines.[2] *See id.* We sustain Appellant's second issue.

---

[2]Irrespective of our modification of the bill of costs, we note that Appellant remains obligated to pay the $2,000 fine that the trial court orally pronounced at sentencing. *See id.*

*This Court's Ruling*

We modify the amended bill of costs to delete the $2,000 fine assessed by the trial court and the $100 "non suspension fine," and as modified, we affirm the judgment of the trial court.


JOHN M. BAILEY
CHIEF JUSTICE


October 23, 2025

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.