# NO. 12-21-00161-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JEREMY JERMAINE CUMBIE,* *APPELLANT* | § | *APPEAL FROM THE 114TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Jeremy Jermaine Cumbie appeals his conviction for possession of a controlled substance. In four issues, Appellant (1) challenges the denial of his motion to suppress, (2) argues the trial court denied his right to due process by considering evidence outside the record in assessing his sentence, (3) contends the trial court refused to consider the full range of punishment, thereby denying his right to due process, and (4) asserts that his eight-year sentence is grossly disproportionate and constitutes cruel and unusual punishment. We affirm the trial court's judgment.

## BACKGROUND

While patrolling in northwest Tyler, Texas, Officer Donald Schick of the Tyler Police Department saw Appellant's vehicle leaving the parking lot of a motel known to police for activity involving narcotics, so he followed Appellant. According to Schick, when Appellant changed lanes without using his turn signal, he stopped Appellant. Appellant had no valid driver's license or valid insurance, and Schick explained that pursuant to the Tyler Police Department's policy, he called for a tow of Appellant's vehicle. Appellant had a scale and a Crown Royal bag in his possession, and he granted consent for Schick to search his vehicle. Upon searching Appellant's car, Schick found liquid phencyclidine (PCP) in the center console and between the front seats.

The dash camera video from Schick's patrol unit was admitted into evidence, as was Schick's body camera video. Schick's dash camera did not capture Appellant's traffic violation, but Schick testified that he had a clear view of Appellant's vehicle and he saw the traffic violation. At the end of the hearing on the motion to suppress, the trial judge stated that he found Schick credible and that he had "no reason to doubt [Schick's] testimony as to his having seen a traffic violation[,]" and he denied Appellant's motion to suppress. Appellant then pleaded "guilty" in an open plea, and the trial court found Appellant guilty and imposed a sentence of eight years of confinement. This appeal followed.

## MOTION TO SUPPRESS

In issue one, Appellant challenges the denial of his motion to suppress. Specifically, Appellant argues that the traffic stop was not justified at its inception, the legal basis for the stop was not objectively grounded, and the State did not prove that he committed a traffic violation. Appellant also asserts that Schick unduly prolonged Appellant's detention to obtain consent to search the vehicle.

### Standard of Review and Applicable Law

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013); *Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010). We give almost total deference to the trial court's determination of historical facts, especially if those determinations turn on witness credibility or demeanor, but we review de novo the trial court's application of the law to facts not based on an evaluation of credibility and demeanor. *Neal v. State*, 256 S.W.3d 264, 281 (Tex. Crim. App. 2008); *see also Kerwick*, 393 S.W.3d at 273. We must view the evidence in the light most favorable to the trial court's ruling. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). At a hearing on a motion to suppress, the trial court is the exclusive trier of fact and judge of the credibility of the witnesses. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). Therefore, a trial court may choose to believe or to disbelieve all or any part of a witness's testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). We review de novo whether the totality of the circumstances is sufficient to support an officer's reasonable suspicion of criminal activity. *State v. Cortez*, 543 S.W.3d 198, 204 (Tex. Crim. App. 2018). We must uphold the trial court's ruling on a motion to suppress if the ruling was supported by the record and was

correct under any theory of law applicable to the case. *Alford v. State*, 400 S.W.3d 924, 929 (Tex. Crim. App. 2013); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003).

A routine traffic stop closely resembles an investigative detention. *Johnson v. State*, 365 S.W.3d 484, 488 (Tex. App.—Tyler 2012, no pet.). Because an investigative detention is a seizure that implicates the United States and Texas constitutions, the traffic stop must be reasonable. U.S. CONST. amend. IV; TEX. CONST. art. I, § 9; *Francis v. State*, 922 S.W.2d 176, 178 (Tex. Crim. App. 1996). To determine the reasonableness of an investigative detention, we must determine (1) whether the officer's action was justified at its inception and (2) whether it was reasonably related in scope to the circumstances that initially justified the interference. *Terry v. Ohio*, 392 U.S. 1, 19-20, 88 S. Ct. 1868, 1879, 20 L. Ed. 2d 889 (1968); *Davis v. State*, 947 S.W.2d 240, 242 (Tex. Crim. App. 1997). An officer's reasonable suspicion justifies an investigative detention. *Davis*, 947 S.W.2d at 242-43. Specifically, the officer must have a reasonable suspicion that some activity out of the ordinary is occurring or has occurred. *Id*. at 244. To determine whether an officer's initial action was reasonable, we ask whether, considering his experience and knowledge, there existed specific, articulable facts which, taken together with rational inferences from those facts, reasonably warranted the intrusion. *Id.* at 242 (citing *Terry*, 392 U.S. at 21, 88 S. Ct. at 1880). Therefore, if an officer has a reasonable suspicion that a person violated a traffic regulation, the officer may legally initiate a traffic stop. *Powell v. State*, 5 S.W.3d 369, 376 (Tex. App.—Texarkana 1999, pet. ref'd).

"It is not necessary to show that the person detained actually violated a traffic regulation." *Johnson*, 365 S.W.3d at 489; *see also Jagnathan v. State*, 479 S.W.3d 244, 247 (Tex. Crim. App. 2015); *Powell*, 5 S.W.3d at 376-77. "It is sufficient to show that the officer reasonably believed that a violation was in progress." *Powell*, 5 S.W.3d at 377. An investigative stop can last no longer than necessary to effectuate the purpose of the stop; that is, a police officer must not unduly prolong a detention. *Kothe v. State*, 152 S.W.3d 54, 63, 65 (Tex. Crim. App. 2004).

> On a routine traffic stop, police officers may request certain information from a driver, such as a driver's license and car registration, and may conduct a computer check on that information. It is only after this computer check is completed, and the officer knows that this driver has a currently valid license, no outstanding warrants, and the car is not stolen, that the traffic-stop investigation is fully resolved.

*Id.* at 63-64 (footnotes omitted). "If during the course of a valid investigative detention, the officer develops a reasonable suspicion that the detainee was engaged in, or soon would engage in criminal activity, a continued detention is justified." ***Powell***, 5 S.W.3d at 377.

## Analysis

Section 545.104(a) of the Texas Transportation Code provides that the operator of a vehicle must use a signal to indicate an intention to change lanes. TEX. TRANSP. CODE ANN. § 545.104(a) (West 2011). Schick testified that he saw Appellant change lanes without using a turn signal, and his observation provided reasonable suspicion for a traffic stop. *See **Rubeck v. State***, 61 S.W.3d 741, 745 (Tex. App.—Fort Worth 2001, no pet.) (holding that a police officer may lawfully stop and detain a motorist who commits a traffic violation in the officer's presence). Giving almost total deference to the trial court's evaluation of Schick's credibility in its role as exclusive trier of fact and judge of the witnesses' credibility and viewing the evidence in the light most favorable to the trial court's ruling, we conclude that the trial court did not err by finding that Schick reasonably suspected that Appellant committed a traffic violation. *See **Neal***, 256 S.W.3d at 281; ***Kelly***, 204 S.W.3d at 818; ***Maxwell***, 73 S.W.3d at 281; *see also **Jagnathan***, 479 S.W.3d at 248 (noting that "there is a difference between what an officer sees during an ongoing event and what we see when reviewing a video."). The State was not required to prove that Appellant violated a traffic regulation; rather, the State was only required to prove that Schick reasonably suspected that Appellant did so. *See **Johnson***, 365 S.W.3d at 489; ***Powell***, 5 S.W.3d at 376-77. Because Schick reasonably suspected that Appellant violated a traffic regulation, the trial court did not err by concluding that the stop was justified at its inception and that the legal basis for the stop was objectively grounded. *See **Terry***, 392 U.S. at 19-20, 88 S. Ct. at 1879; ***Powell***, 5 S.W.3d at 376; ***Davis***, 947 S.W.2d at 242-43. In addition, because Appellant was unable to produce a valid driver's license or proof of insurance, the trial court did not err by concluding that the stop was not unduly prolonged and was reasonably related in scope to the circumstances that initially justified it. *See **Terry***, 392 U.S. at 19-20, 88 S. Ct. at 1879; ***Powell***, 5 S.W.3d at 376; ***Davis***, 947 S.W.2d at 242-43. For all these reasons, we overrule issue one.

## CONSIDERATION OF EVIDENCE OUTSIDE THE RECORD

In issue two, Appellant argues that he was denied due process of law, as well as due course of law under the Texas Constitution, when the trial court considered evidence outside the record

in assessing his sentence. Specifically, Appellant contends the trial court considered evidence outside the record when it (1) speculated that he "must have used drugs many more times than the conduct for which he was charged" and (2) considered the presentence investigation report (PSI), which had not been admitted into evidence.

**Standard of Review and Applicable Law**

Due process requires trial judges to be neutral and detached hearing officers in assessing punishment. *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973), 93 S. Ct. 1756, 1761-62, 36 L. Ed. 2d 656 (1973); *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006). A trial judge has wide discretion in determining punishment; however, the trial judge must remain impartial. *Grado v. State*, 445 S.W.3d 736, 739 (Tex. Crim. App. 2014). Absent a clear showing to the contrary, we presume that the trial court was neutral and detached. *Jaenicke v. State*, 109 S.W.3d 793, 796 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd).

**Analysis**

As discussed above, Appellant asserts that the trial court considered the contents of the PSI although the PSI was not admitted into evidence, and he complains that the trial court "speculated" about his drug usage. At the beginning of the sentencing hearing, the trial judge indicated on the record that he took judicial notice of the PSI. During the sentencing hearing, the trial judge stated,

> I'm bothered by the fact that if this is the only two times you've been around PCP, what are the odds that 100 percent of the times you've been around it, you've either been arrested for it or turned around and tested positive for it. And the root of probation and being successful on probation is being honest and recognizing whatever issues you've got. And I do think you probably have an issue with PCP.

The record does not reflect that Appellant objected to the trial court taking judicial notice of the PSI or to the trial court's alleged speculatory statement that referenced information contained in the PSI. As a prerequisite to presenting a complaint for appellate review, the record must demonstrate that the complaint was made to the trial court by a timely objection that stated the grounds for the requested ruling with sufficient specificity to make the trial court aware of the complaint. TEX. R. APP. P. 33.1(a)(1)(A). The rule requiring preservation applies to all appellate complaints, whether constitutional, statutory, or otherwise, with the exception of rights involving systemic requirements or rights that are non-forfeitable. *See Mendez v. State*, 138 S.W.3d 334,

5

340-41 (Tex. Crim. App. 2004). Appellant does not cite to any authority indicating that he was not required to preserve his complaints regarding the rights he contends were violated.

Even if Appellant had properly preserved error regarding his complaints, the trial court is specifically authorized by statute to consider a PSI in assessing punishment. TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(d) (West Supp. 2021). The Texas Code of Criminal Procedure limits the disclosure of a PSI's contents. *Id*. art. 42A.254 (West 2018) (providing that "The judge may not inspect a presentence report and the contents of the report may not be disclosed to any person unless: (1) the defendant pleads guilty or nolo contendere or is convicted of the offense; or (2) the defendant, in writing, authorizes the judge to inspect the report."). Because access to the information in a PSI is restricted by statute, "the better practice is to not admit the PSI into evidence. Such practice . . . should not restrict the parties' access to that information or the judge's consideration of that information in assessing punishment." *Bell v. State*, 155 S.W.3d 635, 639 n.3 (Tex. App.—Texarkana 2005, no pet.). For all these reasons, the trial court properly took judicial notice of the contents of the PSI and considered the PSI in assessing punishment.

With respect to the trial court's statement that Appellant contends constituted speculation about his drug usage, the PSI reflects that although Appellant denied using any illegal substances except marijuana, he tested positive for PCP when he initially reported, and the counselor who conducted Appellant's substance abuse intake and evaluation diagnosed him with suspected phencyclidine use disorder. When Schick stopped Appellant, Schick found two vials of PCP. The trial judge likely considered the contents of the PSI regarding Appellant's drug history in concluding that Appellant is not likely to successfully complete community supervision. The trial court's statement does not indicate bias or prejudice, and we presume that the trial court acted as a neutral and detached hearing officer. *See Jaenicke*, 109 S.W.3d at 796. For all these reasons, we overrule issue two.

### FAILURE TO CONSIDER FULL RANGE OF PUNISHMENT

In issue three, Appellant contends that the trial court violated his right to due process of law by refusing to consider the full range of punishment.

**Standard of Review and Applicable Law**

As discussed above, due process requires a neutral and detached hearing body or officer. *Gagnon*, 411 U.S. at 786, 93 S. Ct. at 1761-62. It is a denial of due process for the trial court to

6

arbitrarily refuse to consider the entire range of punishment for an offense. *McClenan v. State*, 661 S.W.2d 108, 121 (Tex. Crim. App. 1983). In the absence of a clear showing of bias, we will presume that the trial judge was a neutral and detached officer. *Earley v. State*, 855 S.W.2d 260, 262 (Tex. App.—Corpus Christi 1993, pet. dism'd). Bias is not shown when (1) the trial court hears extensive evidence before assessing punishment, (2) the record contains explicit evidence that the trial court considered the full range of punishment, and (3) the trial court made no comments indicating consideration of less than the full range of punishment. *Brumit*, 206 S.W.3d at 645. In applying our state constitutional guarantee of due course of law, we follow contemporary federal due process interpretations. *U.S. Gov't v. Marks*, 949 S.W.2d 320, 326 (Tex. 1997); *Fleming v. State*, 376 S.W.3d 854, 856 (Tex. App.—Fort Worth 2012), *aff'd*, 455 S.W.3d 577 (Tex. Crim. App. 2014).

**Analysis**

Appellant argues that although he was eligible for probation, the trial court nevertheless sentenced him to eight years of confinement for his first felony drug possession case. In announcing its sentence, the trial judge stated that before the sentencing hearing, he believed that Appellant appeared to be a good candidate for deferred adjudication community supervision "at least on paper[,]" but he had concluded based upon the evidence at the sentencing hearing, including Appellant's testimony, that Appellant is not a good candidate. As discussed above, the trial judge stated that he believed that Appellant has a problem with PCP. In addition, the trial judge explained that Appellant was $13,000 behind in paying child support and had only worked for four out of his fifteen years of adulthood. The trial judge explained, "I don't think what you told me today makes you a successful candidate . . . for probation. So[,] based on that, I am going to find you to be guilty of this offense, . . . and I'm going to sentence you to serve 8 years [of] confinement."

The trial judge heard testimony from two witnesses, including Appellant, during the sentencing hearing, and the trial judge did not make any statements indicating a failure to consider the full range of punishment. *See Brumit*, 206 S.W.3d at 645. The record reflects that the trial court held an extensive sentencing hearing, contemplated a myriad of factors, and considered and rejected Appellant's request for community supervision. *See id*. Based upon the record before us, we conclude that the trial judge considered the full range of punishment, including deferred adjudication, and that the trial judge concluded that Appellant is not a candidate for deferred

adjudication based upon the PSI and the testimony at the sentencing hearing. *See id.* Therefore, Appellant was not denied his right to a detached and neutral magistrate. Accordingly, we overrule issue three.

## CRUEL AND UNUSUAL PUNISHMENT

In issue four, Appellant argues that his eight-year sentence constitutes cruel and unusual punishment and is grossly disproportionate to his crime. Appellant maintains that because he has no prior felony convictions and "did well on his pre-trial release after an early stumble[,]" his eight-year sentence "constitutes cruel and unusual punishment."

## Analysis

"The legislature is vested with the power to define crimes and prescribe penalties." *Davis v. State*, 905 S.W.2d 655, 664 (Tex. App.—Texarkana 1995, pet. ref'd); *see also Simmons v. State*, 944 S.W.2d 11, 15 (Tex. App.—Tyler 1996, pet. ref'd). Courts have repeatedly held that punishment which falls within the limits prescribed by a valid statue is not excessive, cruel, or unusual. *See Harris v. State*, 656 S.W.2d 481, 486 (Tex. Crim. App. 1983); *Jordan v. State*, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973); *Davis*, 905 S.W.2d at 664. In this case, Appellant was convicted of possession of a controlled substance. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(d) (West Supp. 2021) (providing that possession of a controlled substance in the amount of at least four grams but not more than 200 grams is a second-degree felony); *see also* TEX. PENAL CODE ANN. § 12.33 (West 2019) (setting the range of punishment for a second-degree felony at imprisonment "for any term of not more than 20 years or less than 2 years[]"). The eight-year sentence imposed by the trial court falls within the range set by the Legislature. Therefore, Appellant's punishment is not prohibited as cruel, unusual, or excessive per se. *See Harris*, 656 S.W.2d at 486; *Jordan*, 495 S.W.2d at 952; *Davis*, 905 S.W.2d at 664.

Nonetheless, Appellant urges this Court to perform the three-part test originally set forth in *Solem v. Helm*, 463 U.S. 277, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983). Under this test, the proportionality of a sentence is evaluated by considering (1) the gravity of the offense and the harshness of the penalty, (2) the sentences imposed on other criminals in the same jurisdiction, and (3) the sentences imposed for commission of the same crime in other jurisdictions. *Solem*, 463 U.S. at 292, 103 S. Ct. at 3011. Texas courts and the Fifth Circuit Court of Appeals have modified the application of the *Solem* test in light of the United States Supreme Court's decision in

*Harmelin v. Michigan*, 501 U.S. 957, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991) to require a threshold determination that the sentence is grossly disproportionate to the crime before addressing the remaining elements. *See*, *e.g.*, *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992), *cert. denied*, 506 U.S. 849, 113 S. Ct. 146, 121 L. Ed. 2d 98 (1992); *see also Jackson v. State*, 989 S.W.2d 842, 845-46 (Tex. App.—Texarkana 1999, no pet.).

We are guided by the holding in *Rummel v. Estelle*, 445 U.S. 263, 100 S. Ct. 1133, 63 L. Ed. 2d 382 (1980), in making the threshold determination of whether Appellant's sentence is grossly disproportionate to his crime. In *Rummel*, the Supreme Court addressed the proportionality claim of an appellant who received a mandatory life sentence under a prior version of the Texas habitual offender statute for a conviction of obtaining $120.75 by false pretenses. *See id.*, 445 U.S. at 266, 100 S. Ct. at 1135. In *Rummel*, the appellant received a life sentence because he had two prior felony convictions – one for fraudulent use of a credit card to obtain $80.00 worth of goods or services and the other for passing a forged check in the amount of $28.36. *Id.*, 445 U.S. at 266, 100 S. Ct. at 1134-35. After recognizing the legislative prerogative to classify offenses as felonies and considering the purpose of the habitual offender statute, the Supreme Court determined that the appellant's mandatory life sentence did not constitute cruel and unusual punishment. *Id.*, 445 U.S. at 285, 100 S. Ct. at 1145.

In the case at bar, Appellant's offense –possession of a controlled substance in an amount of at least four grams but less than 200 grams – is no less serious than the combination of offenses committed by the appellant in *Rummel*, and Appellant's eight-year sentence is far less severe than the life sentence upheld in *Rummel*. Thus, it is reasonable to conclude that if the sentence in *Rummel* is not constitutionally disproportionate, neither is the sentence imposed upon Appellant. Because we do not conclude that Appellant's sentence is disproportionate to his crime, we need not apply the remaining elements of the *Solem* test. *See McGruder*, 954 F.2d at 316; *Jackson*, 989 S.W.2d at 845-46. We overrule issue four.

## DISPOSITION

Having overruled each of Appellant's four issues, we *affirm* the trial court's judgment.

GREG NEELEY
Justice

Opinion delivered June 30, 2022.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JUNE 30, 2022**

**NO. 12-21-00161-CR**

**JEREMY JERMAINE CUMBIE,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 114th District Court
of Smith County, Texas (Tr.Ct.No. 114-0102-21)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that the decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*