**Affirm and Opinion Filed August 3, 2022**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-19-01137-CR

**NICHOLAS RYAN NADEAU, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

### On Appeal from the 296th Judicial District Court
### Collin County, Texas
### Trial Court Cause No. 296-83228-2018

## MEMORANDUM OPINION

Before Justices Myers, Carlyle, and Goldstein
Opinion by Justice Myers

A jury convicted appellant Nicholas Ryan Nadeau of possession of methamphetamine and assessed punishment at twenty-five years in prison. In four issue, appellant contends (1) the case should be abated because of a conflict between a written order granting appellant's motion to suppress and an oral denial of that same motion; (2) the court erred when it denied appellant's motion to suppress; (3) the court erred in not allowing an investigator for the defense to testify as an expert; and (4) the court erred in not charging the jury pursuant to article 38.23 of the Texas Code of Criminal Procedure. We affirm.

## DISCUSSION

### 1. Abatement for Finding by Trial Court

In his first issue, appellant argues the trial court should be required to make findings to clarify an apparent conflict in the record between a written order signed by the court granting appellant's pretrial motion to suppress and, later, following a suppression hearing, an oral denial of that same motion. The State agreed with appellant to the extent that the law required abatement due to the conflicting oral denial of the motion to suppress.

On June 14, 2022, we abated this matter to the trial court pursuant to rule 44.4 of the Texas Rules of Appellate Procedure and *Henery v. State*, 364 S.W.3d 915, 919 (Tex. Crim. App. 2012), to determine whether the trial court intended the written order granting the motion to suppress to control, or whether the court intended the oral pronouncement to control. On June 30, in response to our order, the court held a hearing and found it had inadvertently signed the order granting the motion to suppress. The court clarified that its ruling was that the motion to suppress was denied, and the court vacated the order granting the motion to suppress.

Because the trial court's ruling granting the motion to suppress resulted from clerical error, it did not warrant reversal. *See id*. We therefore overrule appellant's first issue.

### 2. Motion to Suppress

In his second issue, appellant contends the trial court erred in denying his

motion to suppress the contraband found in his car because the police officer failed to provide specific and articulable facts to support his initial stop of appellant's car.

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *State v. Staton*, 599 S.W.3d 614, 616 (Tex. App.—Dallas 2020, pet. ref'd) (citing *State v. Ruiz*, 577 S.W.3d 543, 545 (Tex. Crim. App. 2019)). We give almost total deference to the trial court's determination of historical facts and review de novo the application of the law to the facts. *Id*. We view the record in the light most favorable to the trial court's ruling. *Id*. When, as in this case, the trial court does not make explicit findings of fact, we view the evidence in the light most favorable to the trial court's ruling and assume the trial court made implicit findings of fact supported by the record. *Lerma v. State*, 543 S.W.3d 184, 190 (Tex. Crim. App. 2018). We will sustain the ruling of the trial court if it is correct under any applicable theory of law. *Id*.

Before trial, defense counsel filed a motion to suppress claiming Officer Colton Roelofs of the Frisco Police Department did not have reasonable suspicion to conduct the traffic stop that led to appellant's arrest for possession of methamphetamine. Roelofs testified that on May 24, 2018, he was conducting narcotics interdiction with his K9 in an area where he had made a lot of drug arrests. He saw appellant leave a Valero gas station, get in his car, and drive off. Appellant was wearing a "7-Eleven" shirt, which caught the officer's eye.

Roelofs had a clear line of sight as appellant's vehicle drove past the place

where the officer's Tahoe was parked, and appellant's turn signal was off as he crossed in front of the officer's patrol car. The officer pulled out and started driving behind appellant, who quickly activated his turn signal and made a right turn into a Snap-E-Jack gas station. Appellant's car was approximately a car length or a car length and a-half away from the turn. The officer based this approximation on the length of his Tahoe, which was 17.1 feet long, and stated that there was "no way" the turn signal was activated "outside of 25 feet" from the turn. He later summarized the distance as "maybe inside of 25 feet, but nowhere close to outside of a hundred feet" from the turn. Roelofs testified that what he saw was a violation of the Texas Transportation Code.

Roelofs testified that appellant passed the initial turn into the gas station and appeared to make a split-second decision to turn at the next entrance once the officer started driving behind him. Roelofs stated that it was not possible appellant's turn signal was on at the time, but if it was, he did not see it "whatsoever" and he "had the angle to where I would have been able to see it." The officer testified that he "would have been able to see [appellant's] violation clearly, or I would . . . not have pulled him over."

During the hearing, the State showed Officer Roelofs's in-car video. Within the first few seconds, the video depicts appellant's car moving across the video frame, the officer pulling out behind appellant's vehicle, and appellant's turn signal blinking right just before the turn.

–4–

The defense called a private investigator, Daryl Parker, who testified that he used software programs such as Google Earth and Corel Draw and made measurements at the scene. Based on his on-scene measurements and his review of the officer's in-car video, Parker's conclusion was that the turn signal was on at approximately 162 feet from the turn. Parker admitted on cross-examination that he was not there on the night of the stop, and he was basing his conclusion on estimates and could not say what the officer could or could not see.

At the end of the hearing, the trial court denied appellant's motion to suppress, stating:

> Excellent investigation, I think, but we are not limited to what the video camera says. We are to take into consideration all of the evidence as a whole, including the officer's testimony. Just think about the days when we didn't have video cameras at all. And so the motion to suppress is denied.

The court did not issue any findings of fact or conclusions of law. The case proceeded to trial on August 26, 2019, and the jury found appellant guilty.

For Fourth Amendment purposes, a traffic stop is a seizure and must be reasonable to be lawful. *Vasquez v. State*, 324 S.W.3d 912, 919 (Tex. Crim. App. 2019). A police officer may make a warrantless traffic stop based on reasonable suspicion of a traffic violation. *See Jaganathan v. State*, 479 S.W.3d 244, 247 (Tex. Crim. App. 2015). An officer has reasonable suspicion if he or she has specific, articulable facts that, when combined with rational inferences from those facts, would lead him or her to reasonably suspect that a particular person has been or soon

will be engaged in criminal activity. *Id.* This is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists. *Wade v. State*, 422 S.W.3d 661, 668 (Tex. Crim. App. 2013); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). A determination of reasonable suspicion is made by considering the totality of the circumstances. *Wade*, 422 S.W.3d at 668; *Ford*, 158 S.W.3d 492–93. The burden is on the State to demonstrate the reasonableness of the investigatory stop. *Goudeau v. State*, 209 S.W.3d 713, 716 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *see also Ford*, 158 S.W.3d at 492.

The evidence in this case supports that Officer Roelofs had reasonable suspicion to conduct a warrantless traffic stop of appellant based on appellant's traffic violation. The officer testified that he observed appellant activate his turn signal at a distance of "maybe inside of 25 feet, but nowhere close to outside of a hundred feet" from the right-hand turn. According to the Texas Transportation Code, "[a]n operator intending to turn a vehicle right or left shall signal continuously for not less than the last 100 feet of movement of the vehicle before the turn." TEX. TRANSP. CODE § 545.104(b). The officer's personal observation of appellant failing to signal his right turn continuously for at least 100 feet before turning, combined with the evidence from the officer's in-car video, provided objective, articulable facts supporting a reasonable suspicion to stop appellant for a traffic violation. *See Castro v. State*, 227 S.W.3d 737, 742 (Tex. Crim. App. 2007) (officer's observation

–6–

of illegal lane change provided sufficient objective, articulable facts to support finding of reasonable suspicion that driver committed traffic violation by failing to signal lane change). Therefore, based on our review of the record, we conclude the trial court did not err in denying appellant's motion to suppress.

We next consider appellant's alternative request that we remand this case to the trial court for entry of specific findings of fact. In support of his position, appellant cites *State v. Elias*, 339 S.W.3d 667 (Tex. Crim. App. 2011), but this reliance is misplaced. *Elias* states in part that "'upon the request of the losing party on a motion to suppress evidence, the trial court shall state its essential findings.'" *Id.* at 674 (quoting *State v. Cullen*, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006)). "'[E]ssential findings'" mean "'findings of fact and conclusions of law adequate to provide an appellate court with a basis upon which to review the trial court's application of the law to the facts.'" *Id.* (quoting *Cullen*, 195 S.W.3d at 699). The findings may be written or stated on the record at the conclusion of the hearing. *Cullen*, 195 S.W.3d at 699. "[A]n appellate court must abate for additional findings of fact when a party has requested findings of fact and the findings that are made by a trial court are so incomplete that an appellate court is unable to make a legal determination." *State v. Saenz*, 411 S.W.3d 488, 495 (Tex. Crim. App. 2013). In this case, however, there is no indication either party requested findings. Furthermore, because the trial court made oral findings at the conclusion of the hearing that are adequate for our review, a remand for additional findings is

unnecessary.  We overrule appellant's second issue.

### 3. Defense Investigator Testifying as Expert

In his third issue, appellant argues the trial court abused its discretion and violated rule 702 by not allowing defense investigator Daryl Parker to testify as an expert witness regarding his investigation and findings.

The admission of expert testimony is governed by Texas Rule of Evidence 702.  *Morales v. State*, 32 S.W.3d 862, 865 (Tex. Crim. App. 2000).  Pursuant to rule 702, a witness may offer an expert opinion if the witness is qualified to do so by knowledge, skill, experience, training, or education and the witness possesses scientific, technical, or other specialized knowledge that will assist the trier of fact to understand the evidence or to determine a fact in issue.  TEX. R. EVID. 702.  If the trial court determines the underlying facts or data do not provide a sufficient basis for the expert's opinion, the opinion is inadmissible.  *See* TEX. R. EVID. 705(c).  Before admitting expert testimony under rule 702, the trial court must be satisfied that three conditions are met: (1) the witness qualifies as an expert by reason of his knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will actually assist the factfinder in deciding the case.  *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006).  These requirements are commonly referred to as qualification, reliability, and relevance.  *Id*.  Each requirement raises distinct questions and issues, and an objection based on one requirement does not

preserve error as to another. *Shaw v. State*, 329 S.W.3d 645, 655–56 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd).

We review a trial court's decision on whether to allow expert opinion testimony for an abuse of discretion. *Gallo v. State*, 239 S.W.3d 757, 765 (Tex. Crim. App. 2007). We must uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). We also review the trial court's ruling in light of the evidence before the trial court at the time the ruling was made. *Id*.

At the outset, we note that appellant's brief does not identify what particular testimony by Parker the trial court excluded. The record shows there were two hearings on the admissibility of Parker's testimony that were held out of the jury's presence, the first before he testified and the second part of the way through his testimony. At the first hearing, defense counsel, when asked by the court under what rule he was conducting the hearing, hesitated to clarify if was offering Parker as an expert or a lay witness, saying both that Parker was being offered as an investigator and "not necessarily as an expert witness," and that he was going to offer Parker as an expert regarding the results of his investigation.

After admitting Parker's CV and listening to him explain his background and education and the specific techniques he used in his analysis of the traffic stop (e.g., using Google Earth "to map out the scene," and then using the officer's in-car video "to determine reference points throughout the video"), the trial court appeared to

rule that Parker was not qualified to testify as an expert that, based on looking at the lights on the video, appellant's blinker was on at least 100 feet before the turn. The court noted there was no indication Parker was "some lighting expert" or "what expert would testify to that," and the jury could "watch the same video" and reach its own conclusion. The court indicated it had no concern about Parker testifying to "where he thinks the hundred feet [mark] was or is because he measured it." But the court was concerned about Parker testifying "that based upon his analysis the blinker was on outside of a hundred feet" because Parker was not qualified to provide such testimony.

The second hearing held out of the jury's presence occurred after Parker started testifying, and it involved multiple rulings on redactions of Parker's slide presentation due to hearsay and speculation objections from the State. The trial court also appeared to rule that Parker could not testify to where appellant activated his blinker "because that's complete speculation," and, again, the jurors could watch "the very same video" and come to their own conclusions.

Appellant contends the trial court's refusal to allow Parker to testify to his "findings and conclusion" was an abuse of discretion, yet appellant does not identity what, specifically, Parker was prevented from offering. He provides only general references to Parker's testimony. Even so, to the extent the court limited Parker's testimony, appellant fails to show an abuse of discretion by the court in its rule 702 evaluation. Appellant claims Parker has experience in crime scene reconstruction;

–10–

he is a crime scene investigator; and an accident reconstruction expert. There is, however, nothing in the record to indicate Parker is an accident reconstruction expert. Also, while Parker testified to his training and experience in investigations and crime scene reconstruction, appellant fails to make the connection between those fields of expertise and Parker's testimony. The trial court asked defense counsel what expertise Parker had regarding lighting and the way it reflected "off the road," to which counsel responded that Parker took measurements. The court observed that measurements were "a different thing," and the court said it did not know "what expert testimony [Parker] is providing" regarding lighting. The trial court also questioned whether such an opinion was verifiable and asked if there was a journal on that subject, to which counsel responded that any conclusory statements on Parker's slide presentation could be edited out. Furthermore, the court could have considered other factors that impacted Parker's credibility, e.g., testifying that the turn signal was on at 162 feet during the suppression hearing and at the 148-foot mark at the rule 702 hearing; acknowledging that he could not say what Officer Roelofs could or could not see on the night of the stop.

We additionally conclude that appellant was not harmed by any error in the limitation of Parker's testimony. *See* TEX. R. APP. P. 44.2(b). The record shows that Parker testified at length before the jury regarding the results of his investigation. He showed the jury a series of slides with satellite images, maps, and photos of the officer's in-car video. He showed an image "approximating the field of view" of the

–11–

officer's in-car camera, and it showed where, on the image, the 100-foot mark was located from the turn into the gas station. Parker testified that he took physical measurements at the scene; he calculated the speed of appellant's car; and he testified that he believed appellant's brake lights were activated at the 148-foot mark. He also showed nine frames depicting appellant's car moving from the point at which he believed "the brake lights were activated until it leaves the screen." He described what he believed was a "change in dimensions of the light . . . as the vehicle moves through the frame," stating that it appeared to grow and diminish as appellant's car moved across the video screen. He discussed what he believed was a "color change" in the image from one frame to the next, and that the vehicle at that point was at the 148-foot mark. During closing arguments, defense counsel emphasized its theory that appellant's car was at the 148-foot mark when the turn signal was activated, based on the change in lighting.

We overrule appellant's third issue.

**4. Jury Charge**

In his fourth issue, appellant contends the trial court erred in not charging the jury pursuant to article 38.23 of the Code of Criminal Procedure on the issue of whether appellant was lawfully detained.

Under article 38.23(a), when the evidence raises a question on whether evidence was illegally obtained, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the law, the jury

–12–

shall disregard any evidence so obtained. *See* TEX. CODE CRIM. PROC. 38.23(a); *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007).

The record shows such an instruction was included in the court's charge to the jury at guilt/innocence. It states as follows:

> Any evidence obtained by an officer or other person in violation of any provision of the Constitution or laws of the State of Texas or of the Constitution or laws of the United States shall be disregarded by the jury.
>
> You are instructed that before an officer has the right to make a temporary investigative detention of a defendant. the officer must have a reasonable suspicion that the defendant is connected with some criminal activity that is or has occurred.
>
> "Reasonable suspicion" means a suspicion that would be held by an ordinary and prudent person in the same circumstances as the officer.
>
> Now, therefore, before you consider the testimony of Officer Colton Roelofs concerning his observation of the defendant at the time of his detention, you must first find beyond a reasonable doubt that the officer had such reasonable suspicion, and if you do not so find beyond a reasonable doubt you will disregard such testimony and evidence.

Indeed, defense counsel quoted and explained this language to the jury during closing arguments.

Because the issue raised by appellant was given to the jury, appellant's complaint is without merit, and we therefore overrule his fourth issue.

–13–

We affirm the trial court's judgment.

191137f.u05
Do Not Publish
TEX. R. APP. P. 47.2(b)

/Lana Myers//
LANA MYERS
JUSTICE