**Opinion filed May 8, 2026**



## In The

# Eleventh Court of Appeals

_____

## No. 11-24-00288-CR

_____

## DELWIN RAY JACKSON, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 90th District Court**

**Stephens County, Texas**

**Trial Court Cause No. F37243**

### M E M O R A N D U M   O P I N I O N

Appellant, Delwin Ray Jackson, was charged by indictment with the third-degree felony offense of possession of a controlled substance, namely methamphetamine, in an amount of one gram or more but less than four grams. TEX. HEALTH & SAFETY CODE ANN. § 481.115(c) (West Supp. 2025). The State also sought to enhance Appellant's punishment based on his two prior final felony convictions. TEX. PENAL CODE ANN. § 12.42(d) (West Supp. 2025).

In advance of trial, Appellant filed a motion to suppress all evidence and contraband that was seized in connection with the warrantless stop initiated by the law enforcement officer, and his subsequent detention and arrest for the charged offense, asserting that: (1) the officer did not have reasonable suspicion to initiate the traffic stop and detain him based on the officer's belief that Appellant had committed a traffic violation; (2) all evidence seized by the officer during the subsequent search of Appellant's vehicle incident to the traffic stop was illegally obtained because the stop was an illegal "pretext" stop; and (3) as a result, his rights under the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 9 of the Texas constitution were violated. The trial court denied Appellant's motion and signed findings of fact and conclusions of law.

After Appellant entered a plea of guilty to the charged offense and a plea of "true" to one enhancement allegation, the trial court, pursuant to the parties negotiated plea agreement, assessed Appellant's punishment at imprisonment for eleven years in the Correctional Institutions Division of the Texas Department of Criminal Justice and a $5,000 fine. As a condition of the plea agreement, and as shown by the trial court's certification, Appellant reserved his right and was granted permission to appeal and challenge the trial court's suppression ruling. *See* TEX. R. APP. P. 25.2(a)(2), (d).

In a single issue on appeal, Appellant contends that the trial court abused its discretion when it denied his motion to suppress because the contraband that was seized from his vehicle was obtained because of an invalid, pretext stop. We affirm.

I. *Factual and Procedural Background*

Shortly after midnight on June 14, 2023, Deputy Jacob Hernandez with the Stephens County Sheriff's Office was on patrol when he observed that a vehicle failed to stop completely at a stop sign. According to Deputy Hernandez, the vehicle

that he observed "roll[ed] through" the stop sign without stopping completely at the intersection. The dashcam in Deputy Hernandez's patrol unit recorded what he observed. Based on his observation, Deputy Hernandez initiated a traffic stop.

Prior to observing the traffic violation, Deputy Hernandez was unaware of the identity of the person who was operating the vehicle that had failed to stop. Subsequent to the traffic stop, Deputy Hernandez determined that Appellant was the operator of this vehicle and Appellant was later arrested after a warrant check revealed that he had two outstanding capias warrants. Although Deputy Hernandez had followed Appellant's vehicle for several blocks before he observed the traffic violation, Deputy Hernandez testified that Appellant's failure to stop at the stop sign was the only reason for initiating the traffic stop.

In his motion, and at the suppression hearing, Appellant contended that Deputy Hernandez initiated a pretext stop, had "targeted" him, and was "looking for a reason to stop" him. The evidence presented to the trial court at the suppression hearing consisted of testimony from Deputy Hernandez, Appellant, and an excerpt from Deputy Hernandez's dashcam video. Contrary to Deputy Hernandez's testimony, Appellant testified that the vehicle he was driving stopped completely at the stop sign before turning, rather than "rolling through" it as Deputy Hernandez claimed. Appellant further asserted that Deputy Hernandez was "lying" and that the dashcam video excerpt did not support Deputy Hernandez's version of events. At the hearing, Appellant's trial counsel also argued that the dashcam video showed that Deputy Hernandez "[activated] his [overhead] emergency lights before [Appellant] ever made the turn," targeted Appellant, and "followed him [for] nine blocks or more trying to find a reason to stop him."

3

## II. *Standard of Review*

A trial court's ruling on a motion to suppress is reviewed for an abuse of discretion. *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). In reviewing its ruling, we apply a bifurcated standard of review. *State v. Arellano*, 600 S.W.3d 53, 57 (Tex. Crim. App. 2020); *Brodnex v. State*, 485 S.W.3d 432, 436 (Tex. Crim. App. 2016); *Martinez*, 348 S.W.3d at 922–23. When the trial court makes express findings of fact, as it did here, we must determine whether the evidence, viewed in the light most favorable to the trial court's ruling, supports its findings. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010); *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).

We afford almost total deference to the trial court's determination of historical facts that the record supports, especially when the trial court's factual findings are based on an evaluation of credibility and demeanor. *Arellano*, 600 S.W.3d at 57; *Derichsweiler v. State*, 348 S.W.3d 906, 913 (Tex. Crim. App. 2011); *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). We also defer to the trial court's findings as to questions of fact and mixed questions of law and fact that turn on the weight or credibility of the evidence. *Brodnex*, 485 S.W.3d at 436; *Wade v. State*, 422 S.W.3d 661, 666–67 (Tex. Crim. App. 2013); *Derichsweiler*, 348 S.W.3d at 913.

We review de novo the trial court's determination of pure questions of law, the application of the law to established facts, and the legal significance of those facts. *Lerma v. State*, 543 S.W.3d 184, 190 (Tex. Crim. App. 2018); *Wade*, 422 S.W.3d at 667; *Derichsweiler*, 348 S.W.3d at 913; *Kothe v. State*, 152 S.W.3d 54, 62–63 (Tex. Crim. App. 2004). We also review de novo mixed questions of law and fact that are not dependent upon credibility determinations. *Brodnex*, 485 S.W.3d at 436; *Derichsweiler*, 348 S.W.3d at 913 (citing *Amador*, 221 S.W.3d at 673).

When considering a motion to suppress, the trial court is the exclusive trier of fact and judge of the credibility of the witnesses. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). As such, the trial court may choose to believe or to disbelieve all or any part of a witness's testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); *Johnson v. State*, 803 S.W.2d 272, 287 (Tex. Crim. App. 1990). Therefore, we will sustain the trial court's ruling on a motion to suppress, regardless of whether the trial court granted or denied the motion, if it is supported by the record and it is correct under any applicable theory of law. *Arellano*, 600 S.W.3d at 57–58; *Lerma*, 543 S.W.3d at 190; *Ross*, 32 S.W.3d at 855–56.

## III. *Discussion*

The Fourth Amendment to the United States Constitution guarantees protection against unreasonable searches and seizures. U.S. CONST. amend. IV; *Hubert v. State*, 312 S.W.3d 554, 560 (Tex. Crim. App. 2010). These constitutional protections extend to investigatory stops of persons or vehicles that fall short of a traditional arrest. *Ramirez-Tamayo v. State*, 537 S.W.3d 29, 36 (Tex. Crim. App. 2017) (citing *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). A warrantless traffic stop by a law enforcement officer to address a traffic violation is a seizure within the meaning of the Fourth Amendment and is tantamount to a temporary detention; therefore, the traffic stop must be justified and, at a minimum, supported by reasonable suspicion. *Whren v. United States*, 517 U.S. 806, 809–10 (1996); *United States v. Sokolow*, 490 U.S. 1, 7 (1989); *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984); *see Jaganathan v. State*, 479 S.W.3d 244, 247 (Tex. Crim. App. 2015); *Derichsweiler*, 348 S.W.3d at 914 (citing *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005)).

Reasonable suspicion exists if a law enforcement officer has specific, articulable facts, based on his knowledge and experience, combined with rational inferences from those facts, that would lead the officer to reasonably suspect or conclude that a particular person has engaged in, is presently engaging in, or soon will engage in criminal activity. *Jaganathan*, 479 S.W.3d at 247; *Derichsweiler*, 348 S.W.3d at 914 (citing *Sokolow*, 490 U.S. at 7); *see Terry v. Ohio*, 392 U.S. 1, 21–22 (1968); *Crain v. State*, 315 S.W.3d 43, 52–53 (Tex. Crim. App. 2010). This is an objective standard that disregards the actual subjective intent of the detaining officer and focuses, instead, on whether there was an objectively justifiable basis for the officer to stop and detain the person. *Terry*, 392 U.S. at 21–22; *York v. State*, 342 S.W.3d 528, 536 (Tex. Crim. App. 2011); *Derichsweiler*, 348 S.W.3d at 914; *State v. Clark*, 315 S.W.3d 561, 564 (Tex. App—Eastland 2010, no pet.) ("There need only be an objective basis for the stop; the subjective intent of the officer conducting the stop is irrelevant.").

The likelihood of criminal activity that is required to support the "reasonable suspicion" standard need not rise to the level that is required for probable cause. *State v. Kerwick*, 393 S.W.3d 270, 273–74 (Tex. Crim. App. 2013). Instead, when evaluating whether reasonable suspicion exists, we consider the totality of the circumstances and whether the totality of the objective information available to the detaining officer when the stop is made indicates that some minimal level of objective justification for the stop existed. *Ramirez-Tamayo*, 537 S.W.3d at 36; *Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012); *Derichsweiler*, 348 S.W.3d at 914–916 (citing *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)); *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). Thus, "[i]f an officer has a reasonable suspicion that a person has committed a traffic violation, the officer

may conduct a traffic stop." *State v. Hardin*, 664 S.W.3d 867, 872 (Tex. Crim. App. 2022).

In his sole issue on appeal, as it is framed, Appellant argues that contraband was illegally seized from his vehicle because the traffic stop initiated by Deputy Hernandez was an unlawful, pretext stop. However, Appellant neither advances any argument in his brief nor does he cite to any authority to support his contention that contraband was illegally seized. Rather, the focus of Appellant's argument on appeal is two-fold: (1) the traffic stop was unlawful because Deputy Hernandez did not observe a circumstance that would be tantamount to an "objectively valid traffic stop"; and (2) the evidence presented to the trial court at the suppression hearing "could not have [been] reasonably believed," does not support the trial court's findings, and instead supports a finding of an unlawful pretext stop.

A. *Pretext Stop*

A pretext stop is one that is effectuated by the detaining officer based on the officer's ulterior motive. *Crittenden v. State*, 899 S.W.2d 668, 671 (Tex. Crim. App. 1995). Such a stop occurs when the detaining officer validly stops a person for a traffic violation for the sole purpose of investigating whether the person has committed a different offense for which the officer would otherwise not have a legal basis to stop or arrest the person. *Garcia v. State*, 827 S.W.2d 937, 939–40 (Tex. Crim. App. 1992). However, an objectively valid traffic stop is not unlawful simply because the detaining officer had an ulterior motive for making it. *Crittenden*, 899 S.W.2d at 671, 674. In other words, even a stop that is found to constitute a pretext stop is permissible if the underlying traffic stop is a valid one. *Id.* at 674.

B. *Reasonable Suspicion – Traffic Stop*

As relevant here, the operator of a motor vehicle that is approaching an intersection that is controlled by a stop sign must stop in a manner prescribed by

Section 544.010(c) of the Transportation Code before turning into or proceeding through the intersection. TEX. TRANSP. CODE ANN. § 544.010(a), (c) (West Supp. 2025).

It is well settled that a traffic violation committed in an officer's presence constitutes probable cause, authorizes the officer to initiate a stop, and justifies the initial detention. *Hardin*, 664 S.W.3d at 872; *Walter v. State*, 28 S.W.3d 538, 543 (Tex. Crim. App. 2000); *Armitage v. State*, 637 S.W.2d 936, 939 (Tex. Crim. App. 1982). Nevertheless, to justify the stop, the State is only required to show that the officer had *reasonable suspicion to believe* that a traffic violation occurred. *See Lerma*, 543 S.W.3d at 190; *Powell v. State*, 5 S.W.3d 369, 376 (Tex. App.— Texarkana 1999, pet. ref'd). Thus, an officer's observation and *reasonable belief* that a traffic violation occurred—here, the failure to stop completely at a stop sign— satisfies the reasonable suspicion standard for conducting a traffic stop. *Yoda v. State*, 630 S.W.3d 470, 479 (Tex. App.—Eastland 2021, pet. ref'd); *Maysonet v. State*, 91 S.W.3d 365, 372 (Tex. App.—Texarkana 2002, pet. ref'd).

Here, the legality of the traffic stop initiated by Deputy Hernandez does not rely on proof that a traffic violation had in fact been committed; rather, it is sufficient to show that Deputy Hernandez *reasonably believed* that Appellant either committed a traffic violation or that a violation was in progress. *Jaganathan*, 479 S.W.3d at 247; *Martinez*, 348 S.W.3d at 923; *Drago v. State*, 553 S.W.2d 375, 377–78 (Tex. Crim. App. 1977). As such, and despite Appellant's contentions, the relevant inquiry is not whether Deputy Hernandez knew the person that he eventually stopped—Appellant—because such knowledge, even if it existed, is irrelevant and of no consequence to our analysis; instead, it is based on Deputy Hernandez's observation—whether he had a *reasonable suspicion to believe* that a traffic

8

violation had been committed or was in progress. Simply put, the focus is on Deputy Hernandez's reasonable *perception and belief*. *Jaganathan*, 479 S.W.3d at 247–48.

Based on the evidence presented and the totality of circumstances, we conclude that Deputy Hernandez provided sufficient, specific facts to support his reasonable belief that Appellant's vehicle failed to stop completely at the stop sign. *See id.* at 247. What Deputy Hernandez perceived and believed based on his observation and his experience as a law enforcement officer cannot be discounted or disregarded only because Appellant contends that the evidence presented to the trial court by the State at the suppression hearing is not worthy of belief. The trial court, as the trier of fact, made its credibility determinations, impliedly finding that Deputy Hernandez's testimony was credible when it denied Appellant's motion, and we defer to its findings, as we must.[1] *Arellano*, 600 S.W.3d at 57; *Jaganathan*, 479 S.W.3d. at 247–48; *Derichsweiler*, 348 S.W.3d at 913; *Maxwell*, 73 S.W.3d at 281; *Ross*, 32 S.W.3d at 855. Therefore, because the trial court found that Deputy Hernandez had an objectively justifiable basis to stop and detain Appellant and investigate the circumstances of the traffic violation, we cannot conclude that the traffic stop of which Appellant challenges violated his constitutional rights, as he suggests. *See Derichsweiler*, 348 S.W.3d at 914.

---

[1]Although Appellant contends that the dashcam video excerpt does not support Deputy Hernandez's visual observations, testimony, and version of the relevant events, we note that studies, research, and analysis have shown that, because of its sophistication, a person's "naked eye" will more accurately assess and perceive an occurrence when compared to what may be reproduced and displayed on a video recording. This is because the "naked eye" and its accompanying cerebral interpretation is significantly superior to a video recording because of its real-time processing and binocular cues which allows a person to more accurately judge distances. Nicholas P. Murray, William Lewinski, Craig Allen, Gustavo Sandri Heidner, Michael W. Albin & Robert Horn, *The eyes have it! Functional field of view of differences between visual search behavior and body-worn camera during a use of force response in active-duty police officers*, 25 POLICE PRAC. & RSCH. 490–497 (2024),https://www.tandfonline.com/doi/epdf/10.1080/15614263.2024.2328664?needAccess=true [https://doi.org/10.1080/15614263.2024.2328664].

Because the evidence, viewed in the light most favorable to the trial court's ruling, supports its findings, *see Arellano*, 600 S.W.3d at 57; *Lerma*, 543 S.W.3d at 190; *Valtierra*, 310 S.W.3d at 447, we conclude that the trial court did not abuse its discretion when it denied Appellant's motion to suppress. Accordingly, we overrule Appellant's sole issue on appeal.

## IV. *This Court's Ruling*

We affirm the judgment of the trial court.


W. STACY TROTTER

JUSTICE


May 8, 2026

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.